FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   NOV 13 2018   ★

LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

RVC Floor Décor, Ltd.

Plaintiff,

vs.

Floor & Decor Holdings, Inc. and Floor and Décor
Outlets of America, Inc.,

Defendant.

Docket No:

**CV18   6449**

HURLEY, J.

LINDSAY, M.J.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A**
**PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

Respectfully submitted,

**BARSHAY SANDERS, PLLC**
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Tel: (516) 203-7600
Fax: (516) 706-5055
Email: *csanders@BarshaySanders.com*
*Attorneys for Plaintiff*
Our File No.: 116508

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................ 2

III.  ARGUMENT .................................................................................................. 4

  A.  LEGAL STANDARDS ................................................................................ 4

  B.  PLAINTIFF IS HIGHLY LIKELY TO SUCCEED ON THE MERITS ........................... 5

    A.  Defendant Is Violating Sections 43(a) of the Lanham Act ................................. 5

      1.  Plaintiff's Marks Merit Protection ........................................... 6

      2.  There Is a Likelihood of Confusion ............................................ 7

        (a)  Plaintiff's Marks Are Strong .......................................... 7

        (b)  Defendants' Mark Is Similar to Plaintiff's Marks ............................. 10

        (c)  The Parties' Products and Services Are in Close Proximity ................... 12

        (d)  Actual Confusion Exists or Is Likely to Arise ................................. 12

        (e)  There Is No Gap to Bridge ............................................... 13

        (f)  Defendant Has Not Adopted its Mark in Good Faith ......................... 14

        (g)  The Quality of Defendant's Services ....................................... 14

        (h)  Purchasers of the Parties' Services Include Unsophisticated Consumers ........... 15

  C.  DEFENDANTS ARE ACTING IN VIOLATION OF STATE LAW
      PROSCRIBING DECEPTIVE TRADE PRACTICES, TRADEMARK
      INFRINGEMENT, AND UNFAIR COMPETITION ...................................... 15

  D.  PLAINTIFF WILL BE IRREPARABLY HARMED ABSENT INJUNCTIVE
      RELIEF ...................................................................................... 16

  E.  THE BALANCE OF HARDSHIPS TIPPING DECIDEDLY IN PLAINTIFF'S
      FAVOR ...................................................................................... 17

CONCLUSION ...................................................................................... 18

i

# TABLE OF AUTHORITIES

## Cases

*1–800 Contacts, Inc. v. WhenU.Com, Inc.,*
414 F.3d 400 (2d Cir .2005) ................................................................................. 5

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,*
237 F.3d 198 (3d Cir. 2000) ................................................................................. 10

*Arrow Fastener Co. v. Stanley Works,*
59 F.3d 384 (2d Cir. 1995) ................................................................................... 9

*Artisan Mfg. Corp. v. All Grante & Marble Corp.,*
559 F. Supp. 2d 442 (S.D.N.Y. 2008) .................................................................. 13

*Bausch & Lomb Inc. v. Nevitt Sales Corp.,*
810 F. Supp. 466 (W.D.N.Y. 1993) ...................................................................... 6

*Boston Duck Tours, LP v. Super Duck Tours, LLC,*
531 F.3d 1 (1st Cir. 2008) .................................................................................... 10

*Brennan's, Inc. v. Brennan's Restaurant, L.L.C.,*
360 F.3d 125 (2d Cir. 2004) .................................................................... 8, 12, 15

*Buffalo Courier–Express, Inc. v. Buffalo Evening News, Inc.,*
601 F.2d 48 (2d Cir. 1979) ................................................................................... 16

*Cadbury Beverages, Inc. v. Cott Corp.,*
73 F.3d 474 (2d Cir. 1996). ........................................................................... 11, 13

*Cuban Cigar Brands N. V. v. Upmann Int'l, Inc.,*
457 F. Supp. 1090  (S.D.N.Y. 1978), aff'd, 607 F.2d 995 (2d Cir. 1979) .................................. 1

*Diarama Trading Co. v. J. Walter Thompson U.S.A. Inc.*
2005 U.S. Dist. LEXIS 19496 (S.D.N.Y. 2005) ................................................... 6

*EMI Catalogue Partnership v. Hill, Holliday Connors, Cosmopulos Inc.,*
228 F.3d 56 (2d Cir. 2000) ................................................................................... 5

*Fed. Express Corp. v. Fed. Espresso, Inc.*
201 F.3d 168 (2d Cir. 2000) *cert. denied,* 546 U.S. 1033 (2005) ................................ 4

*Gruner Jahr USA Pub. v. Meredith Corp.,*
991 F.2d 1072 (2d Cir. 1993) .................................................................... 5, 9, 10

*Hasbro, Inc. v. Lanard Toys, Ltd.,*
858 F.2d 70 (2d Cir. 1988) ................................................................................... 14

*Home Box Office v. Showtime/The Movie Channel,*
    832 F.2d 1311 (2d Cir 1987) ........................................................................ 4

*International Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco,*
    329 F.3d 359 (4th Cir. 2003) ...................................................................... 8

*Inwood Labs., Inc. v. Ives Labs., Inc.,*
    456 U.S. 844 (1982) ..................................................................................... 9

*Johnson & Johnson–Merck Consumer Pharma. Co. v. Procter & Gamble Co.,*
    285 F.Supp.2d 389 (S.D.N.Y. 2003) ........................................................ 16

*Kookai, S.A. v. Shabo,*
    950 F. Supp. 605 (S.D.N.Y. 1997). .......................................................... 13

*Le Sportsac, Inc. v. K Mart Corp.,*
    754 F.2d 71 (2d Cir. 1985) ........................................................................ 16

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
    454 F.3d 108 (2d Cir. 2006) ................................................................... 5, 7

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.,*
    312 F.3d 94 (2d Cir. 2002) ......................................................................... 4

*MyWebGrocer, LLC v. Hometown Info., Inc.,*
    375 F.3d 190 (2d Cir. 2004) ....................................................................... 4

*New York State Elec. & Gas Corp. v. U.S. Gas & Elec., Inc.,*
    697 F. Supp. 2d 415 (W.D.N.Y. 2010) ...................................................... 5

*Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharma., Co.,*
    290 F.3d 578 (3d Cir. 2002) ..................................................................... 16

*P & G v. Ultreo, Inc.,*
    574 F.Supp.2d 339 (S.D.N.Y. 2008) .......................................................... 4

*Paddington Corp. v. Attiki Importers & Distribs., Inc.,*
    996 F.2d 577 (2d Cir. 1993) ....................................................................... 7

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,*
    317 F.3d 209 (2d Cir. 2003) ....................................................................... 8

*Philip Morris USA Inc. v. A & V Minimarket, Inc.,*
    592 F.Supp.2d 669 (S.D.N.Y. 2009) ........................................................ 15

*Pirone v. MacMillan, Inc.,*
    894 F.2d 579 (2d Cir. 1990) ....................................................................... 9

*Polaroid Corp. v. Polaroid Electronics. Corp.,*
    287 F.2d 492 (2d Cir. 1961) ................................................................. 7

*Protection One Alarm Monitoring, Inc. v. Executive Protection One Security Service, LLC.,*
    553 F.Supp.2d 201 (E.D.N.Y. 2008) ................................................... 15

*S.C. Johnson & Son, Inc. v. Clorox Co.,*
    241 F.3d 232 (2d Cir. 2001) ................................................................. 4

*Savin Corp. v. Savin Group,*
    391 F.3d 439 (2d Cir. 2004) ............................................................... 12

*Savin Corp. v. Savin Group,*
    391 F.3d 439 (2d Cir. 2004) ........................................................... 8, 14

*Shields v. Zuccarini,*
    254 F.3d 476 (3d Cir. 2001) ............................................................... 11

*Simon & Schuster, Inc. v. Dove Audio, Inc.,*
    970 F.Supp. 279 (S.D.N.Y.1997) ........................................................ 9

*Sports Auth., Inc. v. Prime Hospitality Corp.,*
    89 F.3d 955 (2d Cir. 1996) ................................................................. 12

*Star Indus., Inc. v. Bacardi & Co.,*
    412 F.3d 373, 381 (2d Cir. 2005), *cert. denied,* 547 U.S. 1019, 126 S.Ct. 1570, 164 L.Ed.2d
    298 (2006).................................................................... 6, 7, 8, 9, 13

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,*
    588 F.3d 97 (2d Cir. 2009) ................................................................. 12

*Streetwise Maps, Inc. v. VanDam. Inc.,*
    159 F.3d 739 (2d Cir. 1998) ............................................................... 12

*Stuart Hall Co., Inc. v. Ampad Corp.,*
    51 F.3d 780 (8th Cir. 1995) ................................................................. 8

*TCPIP Holding Co. v. Haar Communications, Inc.,*
    244 F.3d 88 (2d Cir. 2001)). ............................................................ 8, 9

*Thomas & Betts Corp. v. Panduit Corp.,*
    138 F.3d 277 (7th Cir. 1998) ............................................................... 8

*Time Warner Cable, Inc. v. DirecTV, Inc.,*
    497 F.3d 144 (2d Cir. 2007) ................................................................. 4

*Tucker Anthony Realty Corp. v. Schlesinger,*
    888 F.2d 969 (2d Cir. 1989) ................................................................. 4

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
   505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) .............................................. 6

*Universal City Studios, Inc. v. Nintendo Co., Ltd.,*
   746 F.2d 112 (2d Cir. 1984) ....................................................................................... 11

*Virgin Enters. Ltd. v. Nawab,*
   335 F.3d 141 (2d Cir. 2003) .................................................................................... 7, 12

*W.W.W. Pharm. Co. v. Gillette Co.,*
   984 F.2d 567 (2d Cir. 1993) .................................................................................... 6, 13

*Wal–Mart Stores, Inc. v. Samara Bros., Inc.,*
   529 U.S. 205, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000) ............................................. 9

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.,*
   423 F.3d 137 (2d Cir. 2005) .................................................................................. 13, 15

*Zino Davidoff SA v. CVS Corp.,*
   571 F.3d 238 (2d Cir. 2009) ....................................................................................... 15


**Statutes**

15 U.S.C.
   § 1065 .......................................................................................................................... 1
   § 1114(1)(a), (5) ........................................................................................................... 5
   § 1125(a) ................................................................................................................... 1, 5
   § 1125(a)(1)(A) ............................................................................................................ 5

New York Gen. Bus. L.
   § 360–*l* ........................................................................................................................ 2
   § 349 ............................................................................................................................. 1


**Treatises**

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
   § 11:81, at 11:159 (2005) ............................................................................................. 8

RVC Floor Décor, Ltd. (hereinafter referred to as "*Floor Décor*" or "*Plaintiff*"), by and through the undersigned counsel, respectfully submits this Memorandum in Support of its Motion for a Preliminary Injunction and Temporary Restraining Order against Floor & Decor Holdings, Inc. and Floor and Décor Outlets of America, Inc. (hereinafter referred to as "*Defendants*") pursuant to Fed. R. Civ. Pro. 65.

## I.   INTRODUCTION

Plaintiff has been operating its business under the name Floor Décor since 1974.  Defendants are in the process of opening a store in Farmingdale, New York, under the nearly identical name "Floor & Décor."  Section 15 of the Lanham Act, 15 U.S.C. § 1065, provides in pertinent part that a mark registered and supported by the proper affidavits is incontestable except to the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of the publication under this chapter of such registered mark.  Plaintiff's mark of "Floor Décor" was first used in 1974, and has been used consistently by Plaintiff in the subject geographic area since that time.  Plaintiff's use of its "Floor Décor" mark was well prior to Defendants' registration of their marks in 2003. As such, Defendants' marks are not incontestable as against that of Plaintiff and, since Defendants' use infringes Plaintiff's valid common law rights obtained long prior to Defendants' registration, it has no shield of incontestability in a suit by Plaintiff to enforce its mark. *Cuban Cigar Brands N. V. v. Upmann Int'l, Inc.,* 457 F. Supp. 1090, 1100–01 (S.D.N.Y. 1978), aff'd, 607 F.2d 995 (2d Cir. 1979).

Based on the foregoing, Plaintiff's first claim herein arises under § 43(a) of the Lanham Act, which provides a private right of action against any person "who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device" that "is

1

likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person...." 15 U.S.C. § 1125(a). Plaintiff's second claim for relief sets forth a claim under N.Y. Gen. Bus. L. § 349, which makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state...." The third claim is asserted under Gen. Bus. L. § 360–*l*, which provides that "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

## II.   STATEMENT OF FACTS

In 1973, Ronald Altarac and Robert Smith were junior partners in a flooring company and, unhappy with their treatment, decided to leave and start their own company. *Altarac Affidavit* ¶1. On or about August 27, 1974, RVC Floor Décor, Ltd. was incorporated in New York State as a domestic business corporation ("Floor Décor Ltd"). *Id* ¶2. The first location for Floor Décor was a small store in Rockville Centre located at 430 Sunrise Highway. This store opened on October 4, 1974 under the tradename Floor Décor and quickly grew into a vibrant business. *Id* ¶4

In 1983, an opportunity came about to build a 15,000 square foot showroom at 456 Sunrise Highway in Rockville Centre that would have the ability to handle both retail and designer flooring solutions. *Id* ¶5. Plaintiff seized upon this opportunity. Soon after the opening of this new store, Floor Décor became one of the highest quality showrooms on Long Island with customers coming

from New Jersey to the Hamptons for custom broadloom and area rugs, vinyl tile and flooring. *Id* ¶6.

In 1989 Glenn Altarac ("Altarac"), the current owner of Floor Décor, joined the family business as an employee. Through Altarac's involvement, Plaintiff's business expanded considerably, by adding a new younger base of consumers to its already existing and extensive customer list. *Id* ¶7-8.

In 1996, Ronald Altarac was diagnosed with cancer and Altarac bought out Ronald's interest in Floor Décor Ltd. and became partners with Robert Smith. *Id* ¶10. Shortly thereafter, in or about 1997, Altarac brought in a partner who purchased Robert Smith's interest in Floor Décor Ltd. *Id* ¶11. In the Spring of 2012, Altarac bought out the partner and became the sole owner of the business. *Id* ¶12.

Plaintiff has since 1974 at all times continued to operate the original business of Floor Décor in Rockville Centre. *Id* ¶13. In the Spring of 2014, after establishing its brand for 40 years in Rockville Centre, Floor Décor decided to bring its services to the North Shore. Adding furniture and full interior design services to its flooring business, Floor Décor and opened a new 11,000 square foot showroom in Syosset, New York. *Id* ¶14-15. Through extensive advertising and business development, Floor Décor has become a major showroom for flooring and design in both its Syosset and Rockville Centre locations. *Id* ¶15. Both the Rockville Centre and Syosset stores use the shortened tradename "Floor Décor" for signage, advertising and other business purposes. *Id* ¶17.

Recently, over the last couple of months, customers have begun calling Floor Décor about products not sold by Floor Décor. *Id* ¶19. Presently the stores receive between 5-10 calls a day from customers looking for lower end products not sold by Floor Décor. *Id.* Over the past couple

of weeks, Floor Décor has had a number of customers come to its showrooms who became quite angry since the stores do not carry the low end Chinese imported product that the Defendants advertise. *Id* ¶*20*.   The Floor Décor staff has been treated horribly by customers who feel defrauded by what the customers believe to have been false advertisements. *Id* ¶*21*.   One recent customer went so far as to accuse a Floor Décor salesperson of being racist because she was convinced the company did not want to show her the products she saw online at Defendants' website. *Id.*

Floor Décor has been in business serving customers in Kings, Queens, Nassau and Suffolk for 44 years, but its business has become imperiled by the entry of Floor & Décor into its geographic territory. *Id* ¶*24*.   Since Defendant's "Floor & Décor's" product offerings are at the very lower-end of the spectrum, their presence and brand is impacting Plaintiff's Floor Décor long-recognized business reputation negatively. *Id* ¶*25*.

## III.   ARGUMENT

### A. LEGAL STANDARDS

Injunctive relief is a proper remedy for violations of the Lanham Act under appropriate circumstances. *See, e.g., Time Warner Cable, Inc. v. DirecTV, Inc.,* 497 F.3d 144, 163 (2d Cir. 2007); *Home Box Office v. Showtime/The Movie Channel,* 832 F.2d 1311, 1315 (2d Cir 1987).  To obtain a preliminary injunction under Second Circuit law, the moving party must demonstrate (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, with the balance of hardships tipping decidedly in the moving party's favor. *Fed. Express Corp. v. Fed. Espresso, Inc.* 201 F.3d 168, 173 (2d Cir. 2000) *cert. denied,* 546 U.S. 1033, 126 S.Ct. 749, 163 L.Ed.2d 573 (2005).; *MyWebGrocer, LLC v. Hometown Info., Inc.,* 375

4

F.3d 190, 192 (2d Cir. 2004) (quoting *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.,* 312 F.3d 94, 96 (2d Cir. 2002)). "To establish irreparable harm, Plaintiff must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir. 1989) (internal quotations omitted). Whether to grant or deny a preliminary injunction under these standards lies within the sound discretion of the district court. *S.C. Johnson & Son, Inc. v. Clorox Co.,* 241 F.3d 232, 237 (2d Cir. 2001); *P & G v. Ultreo, Inc.,* 574 F.Supp.2d 339 (S.D.N.Y. 2008).

### B. PLAINTIFF IS HIGHLY LIKELY TO SUCCEED ON THE MERITS

Plaintiff is highly likely to succeed on the merits in that it is clear that Defendants are violating Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) as well as state law proscriptions against deceptive trade practices, trademark infringement, and unfair competition.

#### A. Defendant Is Violating Sections 43(a) of the Lanham Act

Section 43(a) of the Lanham Act protects the Plaintiff's marks or trade names such as "FLOOR DÉCOR & DESIGN" and "FLOOR DÉCOR" from infringement, regardless of whether they have been registered. See *EMI Catalogue Partnership v. Hill, Holliday Connors, Cosmopulos Inc.,* 228 F.3d 56, 57 (2d Cir. 2000); J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition, § 9.4. Whether infringement is asserted under Section 32(1) or 43(a), the Second Circuit applies the same two-prong test: "First, we look to see whether Plaintiff's mark merits protection, and second, whether defendant's use of a similar mark is likely to cause consumer confusion; *Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 454 F.3d 108, 115 (2d Cir. 2006); *Gruner Jahr USA Publishing v. Meredith Corp.,* 991 F.2d 1072, 1075 (2d Cir. 1993). Both prongs of this test are met here.

In *1–800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400 (2d Cir .2005), the Second Circuit succinctly set forth the standards for relief for unregistered trademarks. Pursuant to 15 U.S.C. § 1125(a)(1), a Plaintiff must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) "in connection with the sale ... or advertising of goods or services," 15 U.S.C. § 1114(1)(a), (5), without the Plaintiff's consent. In addition, the Plaintiff must show that defendant's use of that mark "is likely to cause confusion ... as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff]." 15 U.S.C. § 1125(a)(1)(A); see also *New York State Elec. & Gas Corp. v. U.S. Gas & Elec., Inc.*, 697 F. Supp. 2d 415, 426 (W.D.N.Y. 2010).

**1. Plaintiff's Marks Merit Protection**

"[T]he general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). In other words, "an unregistered mark is entitled to protection under the Lanham Act if it would qualify for registration as a trademark." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 381 (2d Cir. 2005), *cert. denied*, 547 U.S. 1019, 126 S.Ct. 1570, 164 L.Ed.2d 298 (2006). To be entitled to protection a mark must be "sufficiently distinctive" either because it is "inherently distinctive" - i.e., its intrinsic nature serves to identify its particular source - or because it has acquired a "secondary meaning" in the minds of consumers. *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 381 (2d Cir. 2005); *Bausch & Lomb Inc. v. Nevitt Sales Corp.*, 810 F. Supp. 466, 471 (W.D.N.Y. 1993).

"Secondary meaning" refers to "the extent to which the public has come to identify the mark with a particular product." *W.W.W. Pharm. Co. v. Gillette Co.,* 984 F.2d 567, 573 (2d Cir. 1993)). To the extent that Defendants have obtained a trademark from the United States Patent and Trade Office, it is clear that Plaintiff, if it had sought to file for a trademark, would have been granted the registration of "FLOOR DÉCOR" since Defendants were able to register that very same mark. Further, there can be no question that Plaintiff's authentic "FLOOR DÉCOR & DESIGN" and "FLOOR DÉCOR" marks have developed a secondary meaning, *to wit,* acquired distinctiveness. Therefore Plaintiff's marks are entitled to protection in an infringement suit. These trade names have been used continuously since 1974 in providing services to thousands of customers seeking flooring in Kings, Queens, Nassau and Suffolk Counties, New York and the public association of the name with Plaintiff and its products is irrefutable. See, e.g., *Diarama Trading Co. v. J. Walter Thompson U.S.A. Inc.* 2005 U.S. Dist. LEXIS 19496, at \*22-25 (S.D.N.Y. 2005).

## 2. There Is a Likelihood of Confusion

In evaluating the second prong of the test for trademark infringement - likelihood of confusion - courts in this Circuit apply the non-exclusive multi-factor test of *Polaroid Corp. v. Polaroid Electronics. Corp.,* 287 F.2d 492,495 (2d Cir. 1961), and consider: (1) the strength of the mark, (2) the similarity of the two marks, (3) the proximity of the products, (4) actual confusion, (5) the likelihood of Plaintiff's bridging the gap, (6) defendant's good faith in adopting its mark, (7) the quality of defendant's products, and (8) the sophistication of the consumers. See, e.g., *Louis Vuitton Malletier*, 454 F.3d at 116. Each of these factors weighs strongly in favor of finding infringement here.

### (a) Plaintiff's Marks Are Strong

For purposes of a likelihood of confusion analysis, the strength of a trademark encompasses two concepts: (i) inherent strength, sometimes called inherent distinctiveness, and (ii) marketplace strength, or "the extent to which prominent use of the mark in commerce has resulted in a high degree of consumer recognition." *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 147 (2d Cir. 2003). A mark's strength can be shown by its inherent distinctiveness, by proof that the mark has secondary meaning, or both. *Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 585 (2d Cir. 1993). Both of Plaintiff's authentic "FLOOR DÉCOR & DESIGN" and "FLOOR DÉCOR" are strong marks in view of their extensive and continuous use in the marketplace by Plaintiff over the past several decades. There can be no dispute that thousands of consumers in Kings, Queens, Nassau and Suffolk Counties, New York recognize these marks and associate them with the products and services of Plaintiff. Thus, the "strength of the mark" factor weighs heavily in Plaintiff favor.

The Second Circuit has explained that "[t]he strength of a mark is determined by its tendency to uniquely identify the source of the product. This tendency is strong to the extent that the mark is distinctive, either inherently or by virtue of having acquired secondary meaning." *Star Indus.*, 412 F.3d at 384; accord *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 217 (2d Cir. 2003); see also *Savin Corp.*, 391 F.3d at 457 ("[T]he strength of a mark depends ultimately on its distinctiveness, or its 'origin-indicating' quality, in the eyes of the purchasing public") (additional internal quotation marks omitted); *Brennan's*, 360 F.3d at 130 ("The strength of a mark refers to its ability to identify the source of the goods being sold under its aegis").

"Determination of strength ... begins with inquiry as to whether the mark has the inherent distinctiveness that would entitle it to protection in the absence of secondary meaning. Marks are classified, in ascending order of strength, as '(1) generic; (2) descriptive; (3) suggestive; [or] (4)

arbitrary or fanciful." *Star Indus.,* 412 F.3d at 384–85 (quoting *TCPIP Holding Co. v. Haar Communications, Inc.,* 244 F.3d 88, 93 (2d Cir. 2001)). "Once a mark has been classified, the second step in determining strength is to consider its degree of distinctiveness, an inquiry that concerns both the inherent inventiveness of the mark itself and the amount of third-party usage of the term as a mark, especially in the market in question." *Id.* (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11:81, at 11:159 (2005)).

Evidence of long-term, continuous, exclusive use is significant evidence of secondary meaning. *See, e.g., International Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco,* 329 F.3d 359, 370 (4th Cir. 2003) (district court did not err in finding that company had shown that its mark had achieved secondary meaning, based in part on evidence of "a long history of continuous, if not exclusive, use of the mark"), *cert. denied,* 540 U.S. 1106, 124 S.Ct. 1052, 157 L.Ed.2d 891 (2004); *Thomas & Betts Corp. v. Panduit Corp.,* 138 F.3d 277, 295 (7th Cir. 1998) ("An additional factor that is important in determining secondary meaning ... is the time, if any, that T & B continuously and exclusively produced" the products that were the subject of its trade dress infringement claim); *Stuart Hall Co., Inc. v. Ampad Corp.,* 51 F.3d 780, 789 (8th Cir. 1995) ("five years' use is a strong factor in favor of secondary meaning"); *see also* 15 U.S.C. § 1052(f) (requiring five years of continuous and exclusive use to establish prima facie evidence of the development of secondary meaning of descriptive marks).

A mark develops secondary meaning (sometimes referred to as "acquired distinctiveness," *see Star Indus.,* 412 F.3d at 385), "when, in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." *Wal–Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 211, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 851, n. 11, 102 S.Ct. 2182, 72 L.Ed.2d 606

(1982)); see also *Arrow Fastener Co. v. Stanley Works,* 59 F.3d 384, 390 (2d Cir. 1995) ("Secondary meaning attaches when 'the name and the business have become synonymous in the mind of the public, submerging the primary meaning of the term in favor of its meaning as a word identifying that business' ") (quoting *Pirone v. MacMillan, Inc.,* 894 F.2d 579, 583 (2d Cir. 1990)).

Whereas a generic mark is never entitled to protection, a descriptive mark "is eligible for protection if it has become distinctive of the producer's goods in commerce. This distinctiveness is generally called secondary meaning." *Simon & Schuster, Inc. v. Dove Audio, Inc.,* 970 F.Supp. 279, 292 (S.D.N.Y. 1997). "Indeed, the United States Patent and Trademark Office does not permit registration of a descriptive mark unless it has attained secondary meaning." *Kensington Pub.,* 2009 WL 4277080, at *3 (citing *TCPIP Holding Co., Inc. v. Haar Communications, Inc.,* 244 F.3d 88, 94 (2d Cir. 2001)). *See also Dooney,* 454 F.3d at 116 ("To qualify for registration under § 2, or to establish protectability under § 43(a), 'a mark must be sufficiently 'distinctive' to distinguish the registrant's goods from those of others' ") (quoting *Star Indus.,* 412 F.3d at 381).

### (b) Defendants' Mark Is Similar to Plaintiff's Marks

In assessing similarity, courts consider both the "overall impression created by the [marks] and the context in which they are found" and "the totality of factors that could cause confusion among prospective purchasers." *Gruner Jahr USA Publ'g,* 991 F.3d at 1078.  Plaintiff's Marks "FLOOR DÉCOR & DESIGN" and "FLOOR DÉCOR" and Defendant's Mark "FLOOR & DÉCOR" are highly similar (if not arguably identical in the minds of consumers). Both begin with FLOOR DÉCOR, with the only difference being the inclusion of an ampersand between the two words in Defendants' infringing mark. The commercial impression is highly similar and the minor differences in the marks are insufficient to dispel confusion. See *Louis Vuitton Malletier,* 454 F.3d

10

at 117 ("[T]he law requires only confusing similarity, not identity."). Thus, the "similarity" factor also weighs heavily in Plaintiff's favor.

"The similarity of the marks is a key factor in determining likelihood of confusion." *Dooney,* 454 F.3d at 117; see also *Burlington,* 426 F.3d at 537 ("Of salient importance among the Polaroid factors is the 'similarity of the marks' test"). That is particularly true when the Plaintiff and Defendants are engaged in the same type of business. *Boston Duck Tours, LP v. Super Duck Tours, LLC,* 531 F.3d 1, 26 (1st Cir. 2008) ("Where the parties are direct competitors, the most important factor ... is the similarity-of-marks inquiry"); accord *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 216 (3d Cir. 2000). "To apply this factor, courts must analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers." *Burlington,* 426 F.3d at 537 (quoting *Gruner + Jahr USA Pub. v. Meredith Corp.,* 991 F.2d 1072, 1078 (2d Cir. 1993))

This "similarity of the marks' test - especially when the comparison is between marks on identical product types ... does not require an identity of marks." *Burlington,* 426 F.3d at 538 n. 3. Although the degree of similarity that is required will vary depending on a number of factors, such as the particular products at issue and the nature of the marketplace in which they are advertised and sold, in general, the marks "need not be identical, but only similar, for there to be a likelihood of confusion." *Id.* See also *Dooney,* 454 F.3d at 117 ("Courts should keep in mind that in this context the law requires only confusing similarity, not identity").

In the real-world context in which consumers are apt to hear or see Plaintiff's authentic Mark "Floor Décor & Design" and Defendants' infringing Mark "Floor & Décor" the differences between the marks are entirely substantial. See *Shields v. Zuccarini,* 254 F.3d 476, 483 (3d Cir.

2001) (finding that plaintiff's and defendant's internet domain names were confusingly similar, where defendant's domain names "closely resemble[d]" plaintiff's, and differed only because they contained "a few additional or deleted letters, or ... rearrang[ed] the order of the words"). See also *Universal City Studios, Inc. v. Nintendo Co., Ltd.,* 746 F.2d 112, 116 (2d Cir. 1984) (although "[q]uestions regarding the likelihood of confusion are normally factual in nature[,] ... 'courts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion as to source' ") (quoting *Warner Bros. Inc. v. American Broadcasting Cos.,* 720 F.2d 231, 246 (2d Cir. 1983))

### (c) The Parties' Products and Services Are in Close Proximity

This factor considers "to what extent the two products compete with each other," *Cadbury Beverages, Inc. v. Cott Corp.,* 73 F.3d 474, 480 (2d Cir. 1996). Both market proximity and geographic proximity are relevant:

> The competitive proximity factor has two elements, market proximity and geographic proximity. Market proximity asks whether the two products are in related areas of commerce and geographic proximity looks to the geographic separation of the products. Both elements seek to determine whether the two products have an overlapping client base that creates a potential for confusion.

*Brennan's. Inc. v. Brennan's Rest., LLC,* 360 F.3d 125, 134 (2d Cir. 2004). Here, both facets of proximity are present. Plaintiff and Defendant both use the marks at issue in connection with identical products and services, namely, the sale of flooring products in same the geographic territory in which Plaintiff operates. Accordingly, this factor also weighs heavily in favor of finding a likelihood of confusion.

### (d) Actual Confusion Exists or Is Likely to Arise

12

If the Plaintiff succeeds in showing that its mark is entitled to protection, then the issue becomes whether "the defendant's use of the allegedly infringing mark would likely cause confusion as to the origin or sponsorship of the defendant's goods with Plaintiff's goods." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,* 588 F.3d 97, 114 (2d Cir. 2009); *see also Savin Corp. v. Savin Group,* 391 F.3d 439, 456 (2d Cir .2004) ("The crucial issue in an action for trademark infringement ... is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question") (internal quotation marks omitted), *cert. denied,* 546 U.S. 822, 126 S.Ct. 116, 163 L.Ed.2d 64 (2005); *Brennan's, Inc. v. Brennan's Restaurant, L.L.C.,* 360 F.3d 125, 128, 130 (2d Cir. 2004) (describing the likelihood of consumer confusion a "[t]he key for a Plaintiff in proving infringement of its trademark" and "the pivotal question" in trademark infringement cases).

While a showing of actual confusion is not required to establish infringement, *see Streetwise Maps, Inc. v. VanDam. Inc.,* 159 F.3d 739, 745 (2d Cir. 1998), "[i]t is self-evident that the existence of actual consumer confusion indicates a likelihood of consumer confusion." *Virgin Enters. Ltd.,* 335 F.3d at 151. Defendant's use of "FLOOR & DÉCOR" in Kings, Queens, Nassau and Suffolk counties, though just beginning, has already caused significant confusion within the marketplace. This factor also weighs heavily in Plaintiff's favor.

### (e) There Is No Gap to Bridge

The "bridging the gap" factor "looks to either the likelihood that [the plaintiff] will enter [the defendant's] business or the average customers perception of the likelihood that the Plaintiff would enter the defendant's market." *Sports Auth., Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 963 (2d Cir. 1996). Where, as here, Defendants have already injected themselves into the

13

marketplace and already compete in the same industry (sale of flooring products) in the same geographic territory (Kings, Queens, Nassau and Suffolk Counties, New York), there is no gap to bridge. See *Kookai, S.A. v. Shabo*, 950 F. Supp. 605, 608 (S.D.N.Y. 1997). Accordingly, this factor too weighs heavily in favor of Plaintiff.

### (f) Defendant Has Not Adopted its Mark in Good Faith

The inquiry here is "whether the defendant adopted its mark with the intention of capitalizing on Plaintiff's reputation and goodwill and any confusion between his and the [Plaintiff] product." *Cadbury Beverages, Inc.*, 73 F.3d at 482. Defendant cannot dispute that it knew of Plaintiff's use of its authentic marks when it adopted its infringing "FLOOR & DÉCOR" mark. Indeed, Defendants had express knowledge of Plaintiff's Marks and, in fact, selected their trademark based on Plaintiff's name. Altarac Aff. ¶28  See *Stat Indus., Inc.*, 412 F.3d at 389 ("Bad faith may be inferred from the junior user's actual or constructive knowledge of the senior user's mark.") (citing *Paddington Corp.*, 996 F.2d at 587).; *Bausch & Lomb Inc.*, 810 F. Supp. at 475 ("The fact that [defendant] developed a mark both similar in sound and appearance to [Plaintiff] trademark, and its failure to offer an innocent explanation for it decision both work to create a strong presumption that defendant acted in bad faith in adopting its [mark]"); *Artisan Mfg. Corp. v. All Grante & Marble Corp.*, 559 F. Supp. 2d 442,452 (S.D.N.Y. 2008) ("The defendants awareness of Plaintiff mark may give rise to an inference of bad faith, which is bolstered if the defendant offers no credible explanation for its adoption of the mark."). This factor also weighs heavily in Plaintiff favor.

### (g) The Quality of Defendant's Services

The inquiry here is whether "the good reputation associated with [Plaintiff] mark" could be "tarnished by [the] inferior merchandise of the [defendant]." *W.W.W. Pharm.*, 984 F.2d at 575. Plaintiff is legitimately concerned that consumers will associate Defendants' business practices with those of Plaintiff, potentially tarnishing Plaintiff's hard-earned reputation in the territory it serves. Mistaken association of Defendants (and/or Defendants' products) with Plaintiff (and/or Plaintiff's products) stands not only to harm Plaintiff's reputation and good standing with its customers, but can also result in direct financial penalties being imposed on Plaintiff. This factor also weighs heavily in Plaintiff's favor.

### (h) Purchasers of the Parties' Products and Services Include Unsophisticated Consumers

Under this factor, courts presume "the more sophisticated the purchaser, the less likely he or she will be confused by the presence of similar marks in the marketplace." *Savin Corp. v. Savin Group*, 391 F.3d 439, 461 (2d Cir. 2004). As a corollary, "unsophisticated consumers aggravate the likelihood of confusion." *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 79 (2d Cir. 1988). Flooring consumers comprise a broad cross-section of the population at large, including the elderly and the disadvantaged. By using the name "FLOOR & DÉCOR" in Plaintiff's geographic catchment area, Defendant greatly exacerbates the likelihood of confusion. This factor thus also weighs heavily in favor of Plaintiff.

Thus, the *Polaroid* factors all support a finding of likely confusion. Hence, Plaintiff is likely to succeed on the merits of its claims under the Lanham Act, satisfying the second prong of the preliminary injunction test.

### C. DEFENDANTS ARE ACTING IN VIOLATION OF STATE LAW PROSCRIBING DECEPTIVE TRADE PRACTICES, TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION

For all of the reasons stated above in Point I.B., Plaintiff is also likely to succeed on its

state law claims. See *Louis Vuitton Malletier,* 454 F.3d at 119 (noting that "[w]e analyze claims

under New York's unfair competition statute in a similar fashion as to how we analyze claims

under the Lanham Act" and vacating denial of preliminary injunction on state trademark and unfair

competition claims based on Plaintiff's likelihood of success on Lanham Act claims).

### D. PLAINTIFF WILL BE IRREPARABLY HARMED ABSENT INJUNCTIVE RELIEF

"In trademark disputes, a showing of likelihood of confusion establishes both a likelihood

of success on the merits and irreparable harm." *Louis Vuitton Malletier v. Burlington Coat Factory*

*Warehouse Corp.,* 426 F.3d 532, 537 (2d Cir. 2005) (quoting *Hasbro, Inc.,* 858 F.2d at 73); *Bausch*

*& Lomb Inc.,* 810 F. Supp. at 470; *Fed. Express Corp. v. Fed. Espresso, Inc.,* 201 F.3d 168, 174

(2d Cir. 2000) (""proof of a likelihood of confusion ... create[s] a presumption of irreparable harm,

and thus a Plaintiff [does] not need to prove such harm independently.""). As shown *supra,* a

likelihood of confusion (if not actual confusion) exists here. Therefore, irreparable harm is

established.

"[A] Plaintiff who establishes that an infringer's use of its trademark creates a likelihood

of consumer confusion generally is entitled to a presumption of irreparable injury." *Zino Davidoff*

*SA v. CVS Corp.,* 571 F.3d 238, 246 (2d Cir. 2009) (quoting *Weight Watchers Int'l, Inc. v.*

*Luigino's, Inc.,* 423 F.3d 137, 144 (2d Cir. 2005)); see also *Brennan's,* 360 F.3d at 129 ("In a

trademark infringement case, proof of a likelihood of confusion establishes both a likelihood of

success on the merits and irreparable harm"). Thus, if the Plaintiff can establish a likelihood of

consumer confusion, it will typically be entitled to injunctive relief, absent some countervailing

circumstances, such as undue delay in seeking injunctive relief. See, e.g., *Philip Morris USA Inc.*

*v. A & V Minimarket, Inc.,* 592 F.Supp.2d 669, 675 (S.D.N.Y. 2009); *Protection One Alarm*

*Monitoring, Inc. v. Executive Protection One Security Service, LLC.*, 553 F.Supp.2d 201, 206–07 (E.D.N.Y. 2008); cf. *Weight Watchers Int'l*, 423 F.3d at 144 (Plaintiff's delay in seeking injunction may warrant denial of relief).

### E. THE BALANCE OF HARDSHIPS TIPPING DECIDEDLY IN PLAINTIFF'S FAVOR

For the same reasons underlying its finding of irreparable harm, that the balance of hardships and the public interest weigh in favor of a limited injunction to ensure that any consumer confusion is limited or eliminated. *See Forschner,* 124 F.3d at 407 (discussing the public policies and interests underlying trademark and competition law). Plaintiff risks both the loss of sales and goodwill if Defendants are permitted to continue to use the challenged marks pending the resolution of this action. The balance thus decidedly favors Plaintiff. Compare, e.g., *Le Sportsac, Inc. v. K Mart Corp.,* 754 F.2d 71, 79 (2d Cir. 1985) (balance of hardships tipped decidedly in Plaintiff's favor where "[i]t would risk loss of both sales and goodwill if K Mart were permitted to continue selling its confusingly similar bags pending resolution of this action"); see also *Power Test Petroleum Distribs., Inc.*, 754 F.2d at 97 ("a trademark epitomizes the goodwill of a business")

Plaintiff will suffer irreparable harm in the absence of preliminary injunctive relief, including the potential destruction of its business. *Buffalo Courier–Express, Inc. v. Buffalo Evening News, Inc.,* 601 F.2d 48, 58 (2d Cir. 1979) (holding that risk that the party seeking the preliminary injunction will have its business destroyed *pendente lite* demonstrates a balance of hardships in favor of the moving party); *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharma., Co.,* 290 F.3d 578, 596 (3d Cir. 2002) ("[T]he injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself."); *Johnson & Johnson–Merck Consumer Pharma. Co. v. Procter & Gamble Co.,* 285 F.Supp.2d 389 (S.D.N.Y. 2003) (noting no real hardship to defendant resulting from

17

injunction other than loss of money from activity "it probably should not have engaged in to begin with").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction should be granted.

**BARSHAY SANDERS, PLLC**

*/s Craig B. Sanders*
Craig B. Sanders
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Tel: (516) 203-7600
Fax: (516) 706-5055
Email: *csanders@BarshaySanders.com*
*Attorneys for Plaintiff*
Our File No.: 116508

18