UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
RVC FLOOR DECOR, LTD.,

               Plaintiff,              <u>MEMORANDUM & ORDER</u>
                                        18-CV-6449 (JS)(ARL)

   -against-

FLOOR AND DECOR OUTLETS OF
AMERICA, INC.,

               Defendant.
--------------------------------X
APPEARANCES
For Plaintiff:      Craig B. Sanders, Esq.
                  Jonathan Mark Cader, Esq.
                  James H. Freeman, Esq.
                  Sanders Law Group
                  333 Earle Ovington Boulevard, Suite 402
                  Uniondale, New York  11530

                  Erica Carvajal, Esq.
                  Sanders Law LLC
                  100 Garden City Plaza, Suite 500
                  Garden City, New York  11530

For Defendant:      Bryan J. Wolin, Esq.
                  H. Forrest Flemming, III, Esq.
                  Robert Nathan Potter, Esq.
                  Kilpatrick Townsend & Stockton LLP
                  1114 Avenue of the Americas, 21st Floor
                  New York, New York  10036

                  Richard Charles Henn, Jr., Esq.
                  Kilpatrick Townsend & Stockton LLP
                  1100 Peachtree Street, Suite 2800
                  Atlanta, Georgia  30309

SEYBERT, District Judge:

        RVC Floor Decor, Ltd., ("Plaintiff") initiated this

trademark infringement case against Floor & Decor Outlets of

America, Inc. ("Defendant") pursuant to Section 43(a) of the Lanham

Act, New York common law, and New York General Business Law Section 360-l.[1]   Trial is scheduled to commence in this case on April 10, 2023.   Presently before the Court is Defendant's Motion to Exclude the Expert Testimony of Christopher Ramey ("Ramey") (ECF No. 170).   For the reasons detailed below, Defendant's motion is GRANTED.

BACKGROUND

I.   Facts

For a thorough recitation of the factual and procedural background of this case, the Court refers the parties to Judge Hurley's March 18, 2021 Memorandum & Order denying Plaintiff's motion for summary judgment and denying in part and granting in part Defendant's cross-motion for summary judgment.   See RVC Floor Decor, Ltd. v. Floor and Decor Outlets of Am., Inc., 527 F. Supp. 3d 305, 312-15 (E.D.N.Y. 2021).[2]   The Court recites only those facts necessary to resolve the instant motion.

---

[1] Plaintiff also brought claims pursuant to New York General Business Law Section 349, which were dismissed during the summary judgment stage of this case.   See RVC Floor Decor, Ltd. v. Floor and Decor Outlets of Am., Inc., 527 F. Supp. 3d 305, 321-22 (E.D.N.Y. 2021).

[2] Judge Hurley's Memorandum & Order is also available on the case docket at ECF No. 147.   Going forward, the Court will refer to this case by its Reporter citation.

A.   <u>Ramey's Qualifications and Report</u>[3]

Ramey describes himself as "a marketing expert with an emphasis on home furnishings and specifically floor coverings." (Ramey Report, Ex. 2, ECF No. 172-2, ¶ 1, <u>attached to</u> Flemming Decl., ECF No. 172.)   Ramey owns a consulting firm known as CPR Marketing Partners, LLC, and is presently the "president of the Home Trust International, Inc." which is "a >400 store marketing organization." (<u>Id.</u>)   Ramey's "clients include many companies in the floor covering and furnishings industries" and he is also "a consultant [with the] Floor Covering Institute" and partner "in www.retail-rescue.net, a company dedicated to helping small independent businesses." (<u>Id.</u>)   Ramey asserts that his "career in floor covering began when [he] was recruited at Penn State by Macy's to enter their . . . 'Executive Management Training Program'" where he was then "placed as an Assistant Buyer in their floor covering departments, carpet and rugs." (<u>Id.</u> ¶ 2.)   Next, Ramey "was employed by WestPoint Pepperell in the carpet division as a territory manager." (<u>Id.</u>)   At the age of 28, Ramey opened his own floor covering store and "[a] few years later . . . was invited to join the American Floorcovering Association Board of Directors." (<u>Id.</u>)

---

[3] The Court notes that Ramey does not have a curriculum vitae ("CV") and no CV was prepared before or after he submitted his report. (<u>See</u> Ramey Dep. Tr., Ex. 1, ECF No. 172-1 at 6:19-6:25, <u>attached to</u> Flemming Decl., ECF No. 172.)

"More recently, [Ramey's] former position was SVP for CCA Global Partners" where he was "responsible for membership of floor covering dealers." (Id. at ¶ 3.)  "Prior to that position [Ramey] was president of two CCA Global Partners brands: International Design Guild . . . and Savvi Formalwear." (Id.) Ramey "wrote a column about marketing and management for ten years for Floor Covering Weekly, a Hearst publication . . . focus[ing] [on] how to help independent floor covering business thrive." (Id. at ¶ 5.)  Ramey has also written "a column for Greentree Gazette . . . [where his] directive was to help academic administrators manage their business like a retail store." (Id. ¶ 6.)  Ramey claims that "[o]ver the last several years, [he has] become Luxury Daily's most quoted expert because of [his] business acumen and understanding of [the] luxury market." (Id. at ¶ 7.) "Luxury Daily is known as [the] 'World's Leading Luxury Business Publication.'" (Id.)  Additionally, Mr Ramey is "a professional speaker and teacher" whose past and current clients include "dozens of floor covering stores and businesses in the shelter and design industries." (Id. at ¶ 8.)  Ramey also highlights that he "earned 'Leader Top 5%' from Gerson Lehrman for [his] contributions working with private equity firms investing in the floor covering industry." (Id. ¶ 9.)

The opinions in Ramey's report "are based on [his] experience . . . and [his] knowledge of the floor covering

industry." (Id. at ¶ 13.) When asked to expound on the methodology used to develop the opinions in his report, Ramey stated that he used "[c]ommon sense, 40 years in the industry, and a pragmatic approach to the workplace." (Ramey Dep. Tr. at 39:9-39:25.) Ramey confirmed that he did not follow any scientific model in developing his opinions. (Id.)

While the Ramey Report does not expressly state that it is being offered as a rebuttal to particular aspects of the report submitted by Jonathan E. Hochman ("Hochman"), Ramey's deposition testimony confirms that it is. Ramey clarified he was rebutting Hochman's opinion "that [Plaintiff's] online marketing strategy and branding [was] inadequate and inconsistent." (Id. at 73:1-73:11.) Ramey also believes "Hochman create[d] standards consistent with a large company" which are "not the [applicable] standards to . . . judge mom-and-pop operations." (Id. at 69:3-69:8.)

Ramey also weighed in on matters not discussed in his report. For example, he did not agree with Hochman's opinion that Defendant was not "seek[ing] to undermine [Plaintiff's] listings in any way" stating that he would "be surprised if [Defendant's] mission [was not] to undermine anyone's listing [since] [t]hat is what they do . . . [specifically] it[] [is] what marketing does." (Id. at 73:12-73:25.) However, when asked if he had "looked at any data regarding what Floor & Decor[] [has] been doing in terms

of its online listings," Ramey replied that he had not.   (Id. at 74:2-74:7.)

### B.   Defendant's Motion

Defendant argues that the Ramey Report should be excluded as untimely because "a cursory reading of it shows the Report contains no rebuttal" of any of Defendant's report. (Support Memo, ECF No. 171 at 4.)   Next, Defendant contends that Ramey's report fails to meet "any of the Daubert indicia of admissibility."  (Id. at 5.)  Specifically, Defendant argues that: (1) Ramey is not qualified to give expert testimony; (2) Ramey's testimony is not based on sufficient facts or data; (3) Ramey did not use any methodology to develop his opinions which renders them unreliable; and (4) Ramey's opinions are not otherwise reliable or relevant.   (Id. at 5-13.)   Plaintiff filed opposition to Defendant's Motion.   (See Opp'n, ECF No. 179.)   Afterwards, Defendant filed a reply.  (See Reply, ECF No. 184.)

### DISCUSSION

### I.   Legal Standard

### A.   Motions *in Limine*

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine."  Highland Cap. Mgmt., L.P. v. Schneider, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing Luce v. United States, 469 U.S. 38, 41 n.4 (1984)).  Motions in limine "aid the trial process by

enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Mango v. BuzzFeed, Inc., 316 F. Supp. 3d 811, 812 (S.D.N.Y. 2018) (quoting Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996)). In ruling on a motion in limine, evidence should be excluded, "[o]nly when [it] is 'clearly inadmissible on all potential grounds.'" United States v. Ceballo, No. 13-CR-0308, 2014 WL 4980554, at *1 (E.D.N.Y. Oct. 6, 2014) (quoting United States v. Paredes, 176 F. Supp. 2d 192, 193 (S.D.N.Y. 2001)). In "considering a motion in limine, [the Court] may reserve judgment until trial, so that the motion is placed in the appropriate factual context." United States v. Chan, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002). Moreover, the Court's ruling on a motion in limine is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer." Id. at 341 (quoting Luce, 469 U.S. at 41).

B. Expert Testimony

The admission of expert testimony is governed by Federal Rule of Evidence ("FRE") 702, which allows the testimony of "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" where:

> (a) the expert's scientific, technical, or
> other specialized knowledge will help the

> > trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b)  the testimony is based on sufficient facts or data;
> >
> > (c)  the testimony is the product of reliable principles and methods; and
> >
> > (d)  the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

While the party seeking admission of the expert testimony bears the burden of demonstrating its admissibility, see In re Vivendi, S.A. Sec. Litig., 838 F.3d 223, 253 (2d Cir. 2016), under FRE 702, district courts perform a "'gatekeeping' role' by 'ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" United States v. Napout, 963 F.3d 163, 187-88 (2d Cir. 2020) (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993)). In fulfilling its role as gatekeeper, the district court "should look to the standards of [FRE] 401 in analyzing whether [the] proffered expert testimony is relevant." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002). Pursuant to FRE 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. However, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the

issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Next, the district court must determine 'whether the proffered testimony has a sufficiently "reliable foundation" to permit it to be considered.'" Amorgianos, 303 F.3d at 265 (quoting Daubert, 509 U.S. at 597). The Court, in making this determination "should consider the indicia of reliability identified in [FRE] 702." Id. "In short, the district court must 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" Id. at 265-66 (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999)).

In addition to the indicia of reliability identified in FRE 702, "Daubert enumerated a list of additional factors bearing on reliability that district courts may consider." United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007). These additional factors include "(1) whether a theory or technique has been or can be tested; (2) 'whether the theory or technique has been subjected to peer review and publication;' (3) the technique's 'known or potential rate of error' and 'the existence and maintenance of standards controlling the technique's operation;' and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community." Id. (quoting Daubert, 509

U.S. at 593-94).   Importantly, the additional factors enumerated in Daubert are not intended to constitute "a 'definitive checklist or test.'"  Amorgianos, 303 F.3d at 266 (quoting Daubert, 509 U.S. at 593).   Instead, "[t]he inquiry envisioned by [FRE] 702 is . . . a flexible one, and 'the gatekeeping inquiry must be tied to the facts of a particular case.'"  Id. (alterations in original) (first quoting Daubert, 509 U.S. at 594, then quoting Kumho Tire, 526 U.S. at 150).

II.  ANALYSIS

As set forth above, Defendant's motion to exclude Ramey from testifying as an expert for Plaintiff has five arguments. The Court addresses Defendant's timeliness argument first and then, in the interests of efficiency, will address Defendant's Daubert arguments.

A.  The Timeliness of Ramey's Rebuttal Report

Defendant's first argument to exclude the Ramey Report is that it is untimely.  (Support Memo at 3.)  Defendant contends that the Ramey Report is an initial expert report masquerading as a rebuttal report because "a cursory reading . . . shows the [Ramey] Report contains no rebuttal of" Defendant's Reports.  (Id.) Defendant highlights that its expert, Dr. Neal, submitted a report which discussed "whether [Plaintiff's] asserted tradename, 'Floor Decor,' has achieved secondary meaning" in the relevant geographical area; however, the Ramey Report contains "no

discussion of surveys <u>or</u> secondary meaning." (<u>Id.</u> at 4.) Similarly, Defendant states that the Hochman Report assessed: (1) Plaintiff's "damages, if any;" (2) "whether [Defendant's] online advertising is typical;" and (3) whether "[Plaintiff's] online advertising has been effective at building a brand name around the name 'Floor Decor.'" (<u>Id.</u>) While Defendant concedes that "the Ramey Report states that it 'defies logic to suggest' that [Plaintiff] has not been damaged," Defendant notes that "the remainder of the Ramey Report is focused on general 'go-to-market' strategies, <u>not</u> online advertising efforts." (<u>Id.</u>)

Defendant asserts that "[t]he case schedule gave [Defendant] 30 days to review and analyze [Plaintiff's] initial expert reports before submitting [Defendant's] own reports." (<u>Id.</u>) Defendant contends that it was "stripped . . . of the opportunity to rebut" the Ramey Report because Plaintiff "failed to serve a timely initial report" and instead served the Ramey Report as a rebuttal. (<u>Id.</u>) Plaintiff counters that the rebuttal report was timely served in accordance with the deadlines set in this case and that Ramey's deposition testimony confirms that the Ramey Report was intended "to be a rebuttal <u>in toto</u>" to the Hochman Report since Ramey "believed the entirety of the Hochman Report [was] inapplicable, as it was not an 'apples to apples' comparison." (Opp'n at 4.) Even if Plaintiff were to concede the Ramey Report was untimely, Plaintiff argues Defendant suffered no

prejudice because Defendant deposed Ramey. (Id. at 4-5.) Plaintiff also argues that Defendant's position is inconsistent in that it argues Ramey's "opinions are unsupported" while simultaneously arguing that "such opinions [are] prejudicial." (Id. at 1.)

Federal Rule of Civil Procedure ("FRCP") 26 permits parties to submit expert testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified by another party." FED. R. CIV. P. 26(a)(2)(D)(ii). "A rebuttal expert report is not the proper place for presenting new arguments, unless presenting those arguments is substantially justified and causes no prejudice." Ebbert v. Nassau County, No. 05-CV-5445, 2008 WL 4443238, at *13 (E.D.N.Y. Sept. 26, 2008) (internal citation omitted). Rebuttal evidence is admissible "when it will explain, repel, counteract or disprove the evidence of the adverse party." Sci. Components Corp. v. Sirenza Microdevices, Inc., No. 03-CV-1851, 2008 WL 4911440, at *2 (E.D.N.Y. Nov. 13, 2008) (quoting Crowley v. Chait, 322 F. Supp. 2d 530, 551 (D.N.J. 2004)).

"The scope of a rebuttal is limited to the same subject matter encompassed in the opposing party's expert report, but district courts have been reluctant to narrowly construe the phrase 'same subject matter' beyond its plain language." In re Specialist and Other Vessel Owner Limitation Actions, No. 16-CV-4643, 2020 WL 8665287, at *2 (S.D.N.Y. June 30, 2020) (quoting Scott v. Chipotle

Mexican Grill, Inc., 315 F.R.D. 33, 44 (S.D.N.Y. 2016)); see also Roberts v. Los Alamos Nat'l Sec., LLC, No. 11-CV-6206, 2016 WL 4442833, at *2 (W.D.N.Y. Aug. 19, 2016) ("[T]he 'same subject matter' language simply requires that a rebuttal report address the same topic as the affirmative report, as opposed to the same topic and methodology the affirmative expert relied on." (emphasis in original))). Consequently, "[a] rebuttal expert is permitted to use new methodologies 'for the purpose of rebutting or critiquing the opinions [of the opposing party's] expert witness.'" In re Specialist, 2020 WL 8665287, at *2.

Where a party challenges an expert report as exceeding "the bounds of proper rebuttal, the court must decide whether to strike the report." In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. and Versys Femoral Head Prods. Liab. Litig., No. 18-MD-2859, 2021 WL 1405185, at *3 (S.D.N.Y. Apr. 14, 2021). In determining whether to preclude expert testimony, courts within the Second Circuit consider four factors, commonly known as the Softel factors:

> (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

Sci. Components, 2008 WL 4911440, at *4 (quoting Softel, Inc. v. Dragon Med. & Sci. Commc'ns, 118 F.3d 955, 961 (2d Cir. 1997)).

13

However, "[p]recluding testimony of an expert, even when there has not been strict compliance with [FRCP] 26, may at times tend to frustrate the Federal Rules' overarching objective of doing substantial justice to litigants."  Id. (alteration in original) (quoting Wechsler v. Hunt Health Sys., Ltd., 381 F. Supp. 2d 135, 155 (S.D.N.Y. 2003)); see also Lab Crafters, Inc. v. Flow Safe, Inc., No. 03-CV-4025, 2007 WL 7034303, at *2 (Oct. 26, 2007) (noting that "the court has considerable discretion" when deciding whether to strike an expert's rebuttal report and that "courts generally favor the determination of issues on the merits" which is "inconsistent with . . . exclusionary relief").

Here, regardless of whether the Court finds that the Ramey report is a timely served rebuttal or an untimely served initial expert report, the Court finds that wholesale preclusion of the report is unwarranted based on a weighing of the Softel factors, particularly due to the fact that Defendant will suffer no prejudice if the Ramey Report is introduced.  Indeed, as Plaintiff notes, Defendant was able to depose Ramey and probe any deficiencies in his Report as well as the bases upon which he formed his opinions.  See In re Zimmer, 2021 WL 1405185, at *3 ("Prejudice can be cured by allowing the movant to challenge the expert's testimony through depositions . . . ."); compare Rekor Sys., Inc. v. Loughlin, No. 19-CV-7767, 2022 WL 2063857, at *9 (S.D.N.Y. June 8, 2022) (excluding untimely expert rebuttal report

14

where allowing its admittance would require the court, out of fairness, "to permit [p]laintiff to reopen discovery [and] depose" the expert); Coene v. 3M Co., 303 F.R.D. 32, 44 (W.D.N.Y. 2014) (excluding expert rebuttal report where, inter alia, the defendant did "not ha[ve] an opportunity to depose [the expert] concerning his new opinions"). Defendant's argument that it was unable to rebut Ramey's report is unavailing and the Court declines to strike the Ramey Report on timeliness grounds. See In re Zimmer, 2021 WL 1405185, at *6 (finding that the fact a party's "experts did not get a sur-rebuttal does not constitute cognizable prejudice" under the Softel factors).

B.    Daubert Indicia of Reliability

1.    Ramey's Qualifications

Defendant next argues that the Ramey Report should be excluded because Ramey is not qualified to serve as an expert in "retail and marketing of home furnishing and floor coverings." (Support Memo at 6.) Defendant highlights that a review of Ramey's qualifications for this role is impossible given that "Ramey does not have a resume." (Id. at 7.) From Ramey's deposition, Defendant extrapolated that Ramey: (1) "does not have a bachelor's degree;" (2) "has never served as an expert witness or submitted an expert report" before; and (3) "has not published an article in at least seven years." (Id.) Moreover, Defendant notes that "any articles [Ramey] previously published were not about flooring or

15

decor products." (Id.)  Plaintiff counters that Ramey is qualified because he "has more than 40 years of experience in the relevant fields." (Opp'n at 8.)  Further, Plaintiff notes that Ramey "is the founder of CPR Marketing Partners, LLC[,] . . . a consultancy specializing in marketing and branding that serves hundreds of businesses including many companies in the floor covering and home furnishings industries." (Id.)

"Whether a purported expert witness is qualified as such by his or her 'knowledge, skill, experience, training or education,' is a 'threshold question' to be resolved prior to the other inquiries." Arista Recs. LLC v. Lime Grp. LLC, No. 06-CV-5936, 2011 WL 1674796, at *2 (S.D.N.Y. May 2, 2011) (first quoting FED. R. EVID. 702, then quoting Nimely v. City of New York, 414 F.3d 381, 396 n.11 (2d Cir. 2005)).  To "determine whether a witness is qualified to render an expert opinion, a court 'must first ascertain whether the proffered expert has the educational background or training in a relevant field.'" Id. (quoting Cary Oil Co., Inc. v. MG Refin. & Mktg., Inc., No. 99-CV-1725, 2003 WL 1878246, at *2 (S.D.N.Y. Apr. 11, 2003)).  To do this, the Court must look at the "totality of [the] witness's background." Arista Recs. LLC v. Usenet.com, Inc., 608 F. Supp. 2d 409, 422 (S.D.N.Y. 2009) (internal citation omitted).  "A witness may be qualified based on any one or more of the qualities listed in [FRE] 702 . . . ." Lime Grp., 2011 WL 1674796, at *2 (citing Tiffany

(NJ) Inc. v. eBay, Inc., 576 F. Supp. 2d 457, 458 (S.D.N.Y. 2007)).

However, "[t]he qualification requirements of [FRE] 702 'must be read in light of the liberalizing purpose of the rule.'" Deutsch v. Novartis Pharm. Corp., 768 F. Supp. 2d 420, 481 (E.D.N.Y. 2011) (quoting United States v. Brown, 776 F.2d 397, 400 (2d Cir. 1985)). "[Q]ualification . . . is determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." Id. (alteration in original) (quoting In re Fosamax Prods. Liab. Litig., 645 F. Supp. 2d 164, 202 (S.D.N.Y. 2009)).

Here, the fact that Ramey does not have a formal education in the field of retail and marketing of home furnishings and floor coverings is not dispositive as to whether he may serve as an expert. See Peerless Ins. Co. v. Marley Engineered Prods. LLC, No. 05-CV-4848, 2008 WL 7440158, at *2 (E.D.N.Y. June 12, 2008) ("This Circuit has adopted a liberal standard for qualifying an expert and there is no requirement that a witness have formal education or training before being qualified as an expert" (citing Nimely, 414 F.3d at 396)).

Notwithstanding, Plaintiff bears the burden of establishing that Ramey is qualified to give every opinion in his report. Where an expert testifies outside the scope of his discipline, the Court must exclude that portion of his testimony. Walker v. Schult, 365 F. Supp. 3d 266, 276 (N.D.N.Y. 2019)

("Whether based on traditional science or specialized experience, [FRE] 702 further mandates that an expert 'stay within the reasonable confines of [their] subject area, and [thus] cannot render expert opinion on an entirely different field or discipline.'" (second and third alterations in original) (quoting Lappe v. Am. Honda Motor Co., Inc., 857 F. Supp. 222, 227 (N.D.N.Y. 1994), aff'd sub nom., 101 F.3d 682 (2d Cir. 1996)); see also Davis v. Carroll, 937 F. Supp. 2d 390, 413 (S.D.N.Y. 2013) ("[W]here an expert is admitted under [FRE] 702 and then purports to offer opinions beyond the scope of his expertise, courts strike the extraneous testimony, as the admission of an expert does not provide that individual with carte blanche to opine on every issue in the case.").

Although Ramey is qualified to testify about retail and marketing of home furnishings and floor coverings based upon his professional experience, the Court finds that neither his education nor experience qualifies him to offer comparative opinions on the quality of the parties' products. Nowhere in Ramey's report does he explain how he deduced that Defendant's "flooring products fall at the lower end of the quality spectrum when compared to [Plaintiff's] products," nor how he could possibly know this based upon his professional experience. (See Ramey Report, in toto.) The extent to which Ramey is even familiar with any of the parties' products is limited to his viewing of

Defendant's website as well as personal visits to a dozen of Defendant's stores; Ramey did not conduct any studies or assessments of Defendant's products before drawing his conclusions.  This falls far short of meeting the low threshold required for being qualified as an expert.  Consequently, Court finds that Ramey is not qualified to offer any opinions on the comparative quality of Defendant's products in relation to Plaintiff's.

### 2.  Sufficient Facts or Data

Defendant next contends that Ramey's "conclusions are not supported by sufficient facts or data -- but instead are mere speculation or unsupported 'opinion.'"  (Support Memo at 7.)  To highlight its point, Defendant notes that Ramey does not cite to any "single fact or data point" to support his opinion which provides that "floor covering is purchased infrequently."  (Id.)  Defendant notes that Ramey's "opinion regarding the quality of [Defendant's] flooring products is pure conjecture . . . [and] undermined by an article [Ramey] attache[d] to his report which acknowledge[d] that [Defendant] [was] able to offer competitive pricing because it buys directly from suppliers and 'buys big.'"  (Id. at 8.)  According to Defendant, Ramey's conclusion, which is that Defendant's pricing is dictated by its purchase of lower quality products compared to Plaintiff, is a "bald assertion" with "no data or facts" to support it.  (Id.)  Plaintiff contends, as

19

it did with regards to Ramey's qualifications, that Ramey has "40 years of experience in the flooring industry" and that this alone qualifies him to render the opinions contained in his report.

Pursuant to FRCP 26(a)(2)(B)(i) an expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Similarly, FRCP 26(a)(2)(B)(ii) requires an expert report to contain "the facts or data considered by the witness in forming [his opinions]." "[P]roffered 'expert testimony should be excluded if it is speculative or conjectural.'" Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 311 (2d Cir. 2008) (quoting Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 22 (2d Cir. 1996)). "An expert's conclusory opinions are similarly inappropriate." Id. "An expert opinion is inadmissible as conclusory if it 'cannot reasonably be assessed for reliability.'" Carotek, Inc. v. Kobayashi Ventures, LLC, 875 F. Supp. 2d 313, 337 (S.D.N.Y. 2012) (quoting Comm. Note to FED. R. EVID. 702 (2000)).

Here, the Court agrees with Defendant that Ramey's report is comprised largely of ipse dixit opinions which contain no citations to any supporting facts or data. (See Ramey Report ¶¶ 15-30.) Similarly, Ramey provides no analysis as to how he came to his conclusions, or how his experience informed his opinions. (Id.) For this reason, the Court finds that Ramey's report must be excluded. See Piepes v. NAI Ent. Holdings LLC, 394

F. Supp. 3d 315, 319 (E.D.N.Y. 2019) (finding that the Court could not perform its gatekeeping role under Daubert where the expert opinion at issue was conclusory in nature, had "no explanation, citation, or analysis [and] . . . read[] like . . . a single sentence conclusion that parrot[ed] the end result a lawyer or someone else has asked him to reach").[4]

### 3. Methodology

Defendant also argues that Ramey fails to use a methodology; specifically, Defendant highlights that at no point in his report does Ramey "set[] forth a methodology, and the report fails to explain how he applied any principles or methodology to any facts or data to arrive at his conclusions." (Support Memo at 9.) Defendant emphasizes Ramey's deposition testimony, in which

---

[4] To the extent Plaintiff may have argued that support for Ramey's opinions could be found in the exhibits attached to his report, without any specific or general references to these exhibits in the report itself, the Court finds that Ramey's report violates FRCP 26(a)(2)(B)'s requirement that the expert's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B)(i) (emphasis added); accord R.C. Olmstead, Inc. v. CU Interface, LLC, 657 F. Supp. 2d 905, 910-11 (N.D. Ohio 2008) (finding that an expert's two page report that summarily stated an opinion and attached 197 pages of exhibits without making any specific references in his report to the supporting material "violated [FRCP] 26(a)(2)(B)'s command to be "detailed and complete" (quoting Salgado by Salgado v. General Motors Corp., 150 F.3d 735, 738 (7th Cir. 1998))), aff'd 606 F.3d 262, 271 (6th Cir. 2010); see also Reed v. Binder, 165 F.R.D. 424, 430 (D.N.J. 1996) (finding several expert reports deficient under FRCP 26(a)(2)(B) where they "refer[red] to massive amounts of documents, [but] the opinions [were] expressed in vague terms with few specific references").

he stated that "the only methodology he relied upon was 'common sense, 40 years in the industry, and a pragmatic approach to the marketplace.'" (Id.)   Plaintiff counters that Ramey has the necessary experience in the industry to make the opinions that he did.

Again, the Court finds that Ramey's lack of methodology or explanation as to how his experience informed his opinions is fatal to the admissibility of his report. Piepes, 394 F. Supp. 3d at 318 (finding that "where 'the witness is relying solely or primarily on experience, . . . the witness must explain how that experience leads to the conclusion reached and how that experience is reliably applied to the facts" because "[t]he trial court's gatekeeping function requires more than simply 'taking the expert's word for it'" (quoting Israel v. Spring Indus., Inc., No. 98-CV-5106, 2006 WL 3196956, at *2 (E.D.N.Y. Nov. 3, 2006))).

Additionally, to the extent Ramey's opinions are based upon "common sense," there is no reason to introduce an "expert" to assist jurors in making common sense determinations -- this is something jurors are perfectly capable of doing without any need for expert opinion. See Betances v. Fischer, No. 11-CV-3200, 2021 WL 1534159, at *4 (S.D.N.Y. Feb. 23, 2021) (noting that "[c]ourts have . . . excluded proposed expert testimony under [FRE] 702 where the resolution of the factual question involved in the case turned on an application of 'common sense,' the antithesis of

expert knowledge" (quoting <u>Dreyer v. Ryder Auto. Carrier Grp., Inc.</u>, 367 F. Supp. 2d 413, 439-40 (W.D.N.Y. 2005))).

Accordingly, the Court finds that Ramey's report is not based on sufficient facts or data and that Ramey does not explain how his experience in the relevant industry led to the opinions he reached in his report.  Consequently, the Court finds that Ramey's report must be excluded in its entirety.

<u>CONCLUSION</u>

For the stated reasons, **IT IS HEREBY ORDERED** that the Defendant's Motion to Exclude the Expert Report of Christopher Ramey (ECF No. 170) is GRANTED.

SO ORDERED.

<u>JOANNA SEYBERT</u>
Joanna Seybert, U.S.D.J.

Dated: April 7, 2023
       Central Islip, New York