Case 2:18-cv-06449-JS-ARL   Document 235   Filed 04/07/23   Page 1 of 15 PageID #: 6992

FILED
CLERK
4/7/2023 4:34 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
RVC FLOOR DECOR, LTD.,

                Plaintiff,              MEMORANDUM & ORDER
                                        18-CV-6449 (JS)(ARL)
      -against-

FLOOR AND DECOR OUTLETS OF
AMERICA, INC.,

                Defendant.
--------------------------------X
APPEARANCES
For Plaintiff:        Craig B. Sanders, Esq.
                      Jonathan Mark Cader, Esq.
                      James H. Freeman, Esq.
                      Sanders Law Group
                      333 Earle Ovington Boulevard, Suite 402
                      Uniondale, New York  11530

                      Erica Carvajal, Esq.
                      Sanders Law LLC
                      100 Garden City Plaza, Suite 500
                      Garden City, New York  11530

For Defendant:        Bryan J. Wolin, Esq.
                      H. Forrest Flemming, III, Esq.
                      Robert Nathan Potter, Esq.
                      Kilpatrick Townsend & Stockton LLP
                      1114 Avenue of the Americas, 21st Floor
                      New York, New York  10036

                      Richard Charles Henn, Jr., Esq.
                      Kilpatrick Townsend & Stockton LLP
                      1100 Peachtree Street, Suite 2800
                      Atlanta, Georgia  30309
```

SEYBERT, District Judge:

   SEYBERT, District Judge:

       RVC Floor Decor, Ltd., ("Plaintiff") initiated this trademark infringement case against Floor & Decor Outlets of

America, Inc., ("Defendant") pursuant to Section 43(a) of the Lanham Act, New York common law, and New York General Business Law Section 360-l.[1]  Trial is scheduled to commence in this case on April 10, 2023.  Presently before the Court is Plaintiff's Omnibus Motion in Limine ("Omnibus Motion").  (ECF No. 193.)  For the reasons that follow, Plaintiff's motion is DENIED.

## DISCUSSION

For a thorough recitation of the factual and procedural background of this case, the Court refers the parties to Judge Hurley's March 18, 2021, Memorandum & Order denying Plaintiff's motion for summary judgment and denying in part and granting in part Defendant's cross-motion for summary judgment.  See RVC Floor Decor, Ltd. v. Floor and Decor Outlets of Am., Inc., 527 F. Supp. 3d 305, 312-15 (E.D.N.Y. 2021).[2]

In its Omnibus Motion, Plaintiff seeks to exclude from trial: (1) "any reference to Plaintiff by its corporate trade name 'RVC Floor Decor Ltd.' [o]r 'RVC' in lieu of its actual trademark FLOOR DECOR"; (2) "any evidence or testimony regarding Plaintiff's

---

[1] Plaintiff also brought claims pursuant to New York General Business Law Section 349, which were dismissed during the summary judgment stage of this case.  See RVC Floor Decor, Ltd. v. Floor and Decor Outlets of Am., Inc., 527 F. Supp. 3d 305, 321-22 (E.D.N.Y. 2021).

[2] Judge Hurley's Memorandum & Order is also available on the docket at ECF No. 147.  Going forward, the Court will refer to this case by its Reporter citation.

2

use of any derivative trademarks such as 'Floor Decor Direct;' 'FD&D;' 'Floor Decor & Design;' 'Floor Decor Carpet One;' 'Floor Decor Carpet One Floor & Home;' and 'Floor Decor and Design Home Design Studio;' or any other derivative trademark adopted by Plaintiff subsequent to July 2014"; and (3) "any evidence or testimony regarding any allegedly similar third-party trademarks, and for such further relief as [the] Court deems just and proper." (Support Memo, ECF No. 194, at 3-10.)  Defendant filed opposition to Plaintiff's Omnibus Motion.  (See Opp'n, ECF No. 203.) Afterwards, Plaintiff filed a reply.  (See Reply, ECF No. 196.)

I. Legal Standard

  A. Motions *in Limine*

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine." Highland Cap. Mgmt., L.P. v. Schneider, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing Luce v. United States, 469 U.S. 38, 41 n.4 (1984)).  Motions in limine "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  Mango v. BuzzFeed, Inc., 316 F. Supp. 3d 811, 812 (S.D.N.Y. 2018) (quoting Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996)).  On a motion in limine evidence should be excluded, "[o]nly when [it] is 'clearly inadmissible on all potential

3

grounds.'" United States v. Ceballo, No. 13-CR-0308, 2014 WL 4980554, at \*1 (E.D.N.Y. Oct. 6, 2014) (quoting United States v. Paredes, 176 F. Supp. 192, 193 (S.D.N.Y. 2001)).  In considering a motion in limine, the Court "may reserve judgment until trial, so that the motion is placed in the appropriate factual context." United States v. Chan, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002). Moreover, the Court's ruling on a motion in limine is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer." Id. at 341 (quoting Luce, 469 U.S. at 41).

As an initial matter, pursuant to Federal Rules of Evidence (hereafter "Rule") 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED R. EVID. 401. However, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.  With these general principles in mind, the Court addresses each of Defendant's arguments in turn.

B.  Secondary Meanings and *Polaroid* Factors

As part of Plaintiff's Claims, Plaintiff must first prove that its unregistered FLOOR DECOR trademark merits protection under the Lanham Act. "An unregistered mark merits protection under the Lanham Act if it 'would qualify for registration as a trademark.'" RVC Floor Decor, 527 F. Supp. 3d at 316 (quoting Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 381 (2d Cir. 2005)). A mark qualifies for registration as a trademark if it is "either (1) inherently distinctive or (2) has acquired distinctiveness through secondary meaning." Id. (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992)). Since Plaintiff has conceded that its mark is not inherently distinctive, it must prove secondary meaning to merit protection under the Lanham Act. "A mark has secondary meaning if 'in the minds of the public, the primary significance of [the] product feature or term is to identify the source of the product rather than the product itself. Id. (quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851 n.11 (1982)).

Next, after establishing that its mark is entitled to trademark protection, to succeed in a trademark infringement suit, "plaintiff must prove under 15 U.S.C. § 1114(a) . . . that there is a likelihood of confusion," that is, "that numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the

5

marketplace of defendant's mark." Gruner + Jahr USA Pub. v. Meredith Corp., 991 F.2d 1072, 1077 (2d Cir. 1993). In assessing the likelihood of confusion, courts in the Second Circuit refer to the factors articulated in Polaroid Corp. v. Polarad Elec. Corp., 287 F.2d 492 (2d Cir. 1961):

> (1) the strength of the plaintiff's mark;
> (2) the degree of similarity between the plaintiff's and defendant's mark; (3) the competitive proximity of the products sold under the marks; (4) the likelihood that the plaintiff will bridge the gap; (5) actual confusion; (6) the defendant's good faith, or lack thereof, in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the plaintiff's customers.

Capri Sun GmbH v. Am. Beverage Corp., 595 F. Supp. 3d 83, 145 (S.D.N.Y. 2022) (quoting Time, Inc. v. Petersen Pub. Co. L.L.C., 173 F.3d 113, 117 (2d Cir. 1999)).

With these principles in mind, the Court turns to each of Plaintiff's motions in limine, and addresses each in turn.

## II. References to Plaintiff's Corporate Trade Name

Plaintiff first moves to preclude Defendant "from referring to or otherwise adducing any evidence or testimony at trial relating to Plaintiff's corporate trade name." (Support Memo at 3.) Additionally, Plaintiff argues that "Defendant should further be excluded from referring to Plaintiff as 'RVC' or as 'RVC Floor Decor Ltd' during the course of the trial." (Id.) Plaintiff avers that RVC Floor Decor Ltd "is merely the trade name

6

of Plaintiff's corporate entity" and "[s]ince 1974, Plaintiff has continuously used the trademark FLOOR DECOR to identify and distinguish its goods, not its corporate trade name." (Id. at 5.) Plaintiff further highlights that the RVC portion of its corporate trade name "has never been used by Plaintiff[] in any of its signage, advertising, letterhead or other business usage." (Id.) Conversely, Defendant argues that Plaintiff's "inconsistent use of Floor-Decor-formative names, including [its] corporate name . . . is highly relevant to the secondary meaning [and strength of the mark] analysis." (Opp'n at 1.) Defendant further avers that Plaintiff's argument, that it has not used its corporate name in any signage, advertising or other business usage, is "demonstrably false" and that in actuality Plaintiff "has used its corporate name and related variants in connection with numerous consumer-facing materials -- including on its public-facing website [] and in promotional materials." (Id. at 1-2.) For example, Defendant proffers that Plaintiff has inconsistently presented itself in business listings as "RVC Floor Decor Carpet One;" (Id. at 2.) "R V C Floor Decor;" (Id.) and "RVC Floor Decor Limited." (Id.) Moreover, Defendant notes that Plaintiff's own customers refer to Plaintiff by a variety of names in thank-you letters. (Id.)

"[T]he fact that [a] plaintiff infuse[s] the market with several names . . . decreases the likelihood that any one name

7

[will] acquire[] secondary meaning." Fraga v. Smithhaven MRI, 866 F. Supp. 107, 112 (E.D.N.Y. 1994). This principle also applies to the "strength of the mark" Polaroid factor. See e.g., Sorensen v. WD-40 Co., 792 F.3d 712, 731 (7th Cir. 2015) ("Inconsistent use makes a symbol less helpful to consumers as a source indicator, and therefore a weaker mark"); Reebok Intern. Ltd. v. K-Mart Corp., 849 F. Supp. 252, 262 (S.D.N.Y. 1994), vacated as moot, No. 92-CV-8871 (S.D.N.Y. Dec. 28, 1994) (noting that one limitation to the strength of Reebok's Stripecheck mark was that "Reebok ha[d] used the Stripecheck inconsistently" choosing instead to "focus[] primarily on other marks in establishing its brand identity among consumers," which meant that "many consumers might [] view the Stripecheck as merely a decorative flourish, and not as an indicator of origin").

In view of the foregoing, the Court finds evidence of Plaintiff's use of names other than its asserted mark, i.e., FLOOR DECOR, is relevant to both the secondary meaning analysis and the "strength of the mark" Polaroid factor. Plaintiff's argument that it cannot control third parties publishing "its publicly available corporate tradename" on their business listings is unavailing; such argument may go to the weight of the evidence but not its admissibility. See Morgans Grp. LLC v. John Doe Co., No. 10-CV-5225, 2012 WL 1098276, at *7 (S.D.N.Y. March 31, 2012) (citing Fraga and finding that plaintiff "ha[d] been listed under a variety

8

of names in the press, and not just the names which [plaintiff] claim[ed] an interest" in, such that the "smaller subset of listings that" did refer to plaintiff's claimed name were "simply insufficient to establish secondary meaning"). Additionally, evidence which shows that Plaintiff's customers refer to Plaintiff by various names is also relevant and will not be excluded. See Sizes Unlimited, Inc. v. Sizes To Fit, Inc., 871 F. Supp. 1558, 1564-65 (E.D.N.Y. 1994) (considering "customer correspondence offered by plaintiffs" to establish secondary meaning); see also Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J., 894 F. Supp. 2d 288, 320 (S.D.N.Y. 2012) (finding that "courts . . . will consider direct testimony of customers to show evidence of secondary meaning.").

### III. Evidence Relating to Plaintiff's Derivative Marks

Plaintiff's second in limine request seeks to exclude "any evidence at trial of Plaintiff's use of Derivative Marks to the extent such use post-dated July 2014" which is one year prior to the date by which Plaintiff must establish that it achieved secondary meaning. (Support Memo at 6.) Plaintiff's arguments in support of its request are threefold. First, Plaintiff argues that its "use of any Derivative Marks subsequent to July 2015 is not probative of any issue in this case" since evidence of secondary meaning which postdates Defendant's entry into the market is irrelevant. (Id.) Second, Plaintiff argues that "none

9

of the Derivative Marks could have acquired secondary meaning on their own in less than one year [and so] no reasonable jury could find that Plaintiff's adoption of any derivative mark so close to the secondary meaning deadline could have impact the analysis." (Id. at 7.) Finally, Plaintiff contends that "since Plaintiff has continuously used its original mark . . . in commerce since 1974, it necessarily acquired secondary meaning regardless of Plaintiff's use of any subsequent marks." (Id. at 8.) Defendant counters that, while Plaintiff "is correct that secondary meaning must be established by July 2015," that the strength of the mark Polaroid factor is assessed "at the time the mark is asserted in litigation." (Opp'n at 3.) Consequently, Defendant avers that evidence of Plaintiff's use of derivative marks is relevant and not restricted by date. (Id.)

The "Strength of the Mark" Polaroid factor is assessed "at the time the mark is asserted in litigation to prevent another's use." Horn's, Inc. v. Sanofi Beaute, Inc., 963 F. Supp. 318, 322 (S.D.N.Y. 1997); see also Ty Inc. v. Softbelly's Inc., No. 00-C-5230, 2006 WL 5111124, at *16 (N.D. Ill. Apr. 7, 2006) ("The strength of the mark should be determined at the time of litigation and not at the time the alleged infringer entered the market"); Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc., 405 F. Supp. 2d 680, 690 (E.D. Va. 2005) (strength of the mark measured "as of the time the mark is asserted in litigation)

10

(citing 2 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 11:80 (5th ed. 2022)). "Although 'secondary meaning' and 'commercial strength' are separate concepts, '[w]hen determining the commercial or marketplace strength of a mark, the courts look to the same kind of evidence of real world recognition of the mark as is used to decide the presence of secondary meaning.'" Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc., 307 F. Supp. 3d 260, 289 (S.D.N.Y. 2018) (quoting McCarthy on Trademarks & Unfair Competition §§ 11:82, 15:1, 15:25).

The Court declines Plaintiff's invitation to exclude, as irrelevant, evidence of Plaintiff's use of derivative marks which post-date July 2014. Since the strength of the mark should be determined at the time of litigation, post-2014 evidence of Plaintiff's use of derivative marks would be relevant to this factor.

IV. Evidence Relating to Third-Party Usage of Similar Marks

Finally, Plaintiff argues that the Court should "exclude all evidence of third-party usage as irrelevant" under Rule 402. (Support Memo at 10.) While conceding that evidence of third-party use of a mark may indicate a lack of secondary meaning, Plaintiff nevertheless avers that Defendant's third-party use evidence suffers from three major flaws. (Id. at 9-10.) First, Plaintiff argues that Defendant "must . . . prove that the third

11

party trademarks were actually used by third parties, that they were well promoted or that they were recognized by consumers." (Id. at 9 (citations omitted)). Second, Plaintiff contends that "any evidence of third-party marks must be relevant to the secondary meaning timeframe." (Id.) Finally, Plaintiff argues that "evidence of [third-party] marks must be relevant to the geographic territory at issue." (Id.) Defendant counters that evidence of third-party use of the mark at issue "is plainly admissible at trial to show that the Asserted Name . . . lacks commercial strength under the first Polaroid factor." (Opp'n at 4.) Additionally, Defendant argues that Plaintiff cites no authority for its contention that Defendant must "first prove that the third-party trademarks were actually used by third parties." (Id. at 5.) Moreover, Defendant avers that Plaintiff's objections to the third-party use evidence go to its weight and not its admissibility. (Id. at 5-6.)

"The first Polaroid factor 'focuses on "the distinctiveness of the mark, or more precisely, its tendency to identify the goods" as coming from a particular source.'" LCL XIII Brands, Inc. v. Louis Vuitton Malletier S.A., 209 F. Supp. 3d 612, 667 (S.D.N.Y. 2016) (quoting Lang v. Retirement Living Pub. Co., Inc., 949 F.2d 576, 581 (2d Cir. 1991)). "Assessing this factor, courts consider both the inherent distinctiveness of a mark and the distinctiveness it has acquired in the marketplace,

12

i.e., secondary meaning." Id. (citing Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 743 (2d Cir. 1998)). "[T]he extent of third-party use [is] particularly relevant to this inquiry." Id. (citing Star Indus., 412 F.3d at 385). See also Giggle, Inc. v. netFocal, Inc., 856 F. Supp. 2d 625, 632 (S.D.N.Y. 2012) ("When reliable, . . . evidence of third-party use of a mark is very persuasive in proving lack of secondary meaning."). "[E]vidence of third-party marks is relevant only when indicative of how third parties actually use the marks in commerce, but there are various ways to evidence such actual use." Id. at 632-33 (citing Scarves by Vera, Inc. v. Todo Imports Ltd., 544 F.2d 1167, 1173 (2d Cir. 1976)).

The Court declines to preclude Defendant's third-party use evidence at this stage since such evidence is relevant in assessing the first and second Polaroid factors.[3] Plaintiff's

---

[3] To the extent Plaintiff relies upon the Court's summary judgment ruling in this case as support that Defendant's third-party use evidence is inadmissible, Plaintiff's reliance is misplaced. Judge Hurley did not find that, to use its third-party use evidence, Defendant must first prove that the marks used by third parties were "well promoted or that they were recognized by consumers." See RVC Floor Decor, Ltd., 527 F. Supp. 3d at 318-319. Judge Hurley offered no opinion as to the admissibility of the third-party use evidence. Id. Instead, in weighing the secondary meaning factors Judge Hurley considered Defendant's third-party use evidence and gave it the weight it deserved. Id. Judge Hurley next considered the third-party use evidence in considering the "Strength of the Mark" Polaroid factor. Id. at 323. Judge Hurley specifically noted that Defendant contested Plaintiff's "mark's strength with reference to . . . third-party use" evidence. Id. Judge Hurley ultimately found that "[t]he

13

argument that, to be admissible, Defendant must first prove that the third-party marks were "actually used by third parties, that they were well promoted or that they were recognized by consumers," is unavailing. See Easy Spirit, LLC v. Sketchers U.S.A., Inc., 571 F. Supp, 3d 185, 204 n.9 (S.D.N.Y. 2021) ("[E]vidence of mark registrations was enough for the Second Circuit . . . to find that third-party registrations for competitive products weakened the strength of the senior mark, without additional evidence of the extent of the use of those marks") (citing Car-Freshner Corp. v. Am. Covers, LLC, 980 F.3d 314, 328-30 (2d Cir. 2020)); see also Juice Generation, Inc. v. GS Enters. LLC, 794 F.3d 1334, 1338-39 (D.D.C. 2015) (holding that evidence of third-party use of a mark was "powerful on its face" even when there were no "specifics regarding the extent of sales or promotional efforts surrounding the third-party materials and, thus, what impact, if any, these uses had in the minds of the purchasing public"). Regardless, "there are various ways to evidence such actual use," Giggle, Inc., 856 F. Supp. 2d at 632, and Defendant has proffered various ways in which these third-party party marks were used including: (1) the registering of corporate names with "floor" and/or "décor," (2) the publication of such names in business listings, and

---

evidence [on this point was] neutral, as a rational trier of fact could weigh it in either party's favor." Id.

14

(3) publication of such marks on social media and third-party websites.  (Opp'n at 4-5.)

## CONCLUSION

For the stated reasons, **IT IS HEREBY ORDERED** that the Plaintiff's Omnibus Motion in Limine (ECF No. 193) is DENIED.

SO ORDERED.

JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: April 7, 2023
       Central Islip, New York

15