```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
RVC FLOOR DECOR, LTD.,

                Plaintiff,                    MEMORANDUM & ORDER
                                              18-CV-6449 (JS)(ARL)
     -against-

FLOOR AND DECOR OUTLETS OF
AMERICA, INC.,

                Defendant.
---------------------------------X
APPEARANCES
For Plaintiff:       Craig B. Sanders, Esq.
                     Jonathan Mark Cader, Esq.
                     James H. Freeman, Esq.
                     Sanders Law Group
                     333 Earle Ovington Boulevard, Suite 402
                     Uniondale, New York  11530

                     Erica Carvajal, Esq.
                     Sanders Law LLC
                     100 Garden City Plaza, Suite 500
                     Garden City, New York  11530

For Defendant:       Bryan J. Wolin, Esq.
                     H. Forrest Flemming, III, Esq.
                     Robert Nathan Potter, Esq.
                     Kilpatrick Townsend & Stockton LLP
                     1114 Avenue of the Americas, 21st Floor
                     New York, New York  10036

                     Richard Charles Henn, Jr., Esq.
                     Kilpatrick Townsend & Stockton LLP
                     1100 Peachtree Street, Suite 2800
                     Atlanta, Georgia  30309
```

SEYBERT, District Judge:

SEYBERT, District Judge:

RVC Floor Decor, Ltd., ("Plaintiff") initiated this trademark infringement case against Floor & Decor Outlets of

America, Inc., ("Defendant" or "F&D") pursuant to Section 43(a) of the Lanham Act, New York common law, and New York General Business Law Section 360-l.[1]  Trial is scheduled to commence in this case on April 10, 2023.  Presently before the Court is Plaintiff's Motion in Limine (hereafter the "Motion") based upon Judicial Estoppel.  (ECF No. 197.)  For the reasons that follow, Plaintiff's Motion is DENIED.

BACKGROUND

I.  Facts

For a thorough recitation of the factual and procedural background of this case, the Court refers the parties to Judge Hurley's March 18, 2021 Memorandum & Order denying Plaintiff's motion for summary judgment and denying in part and granting in part Defendant's cross-motion for summary judgment.  See RVC Floor Decor, Ltd. v. Floor and Decor Outlets of Am., Inc., 527 F. Supp. 3d 305, 312-15 (E.D.N.Y. 2021).[2]  The Court recites only those facts necessary to resolve the instant motion.

---

[1] Plaintiff also brought claims pursuant to New York General Business Law Section 349, which were dismissed during the summary judgment stage of this case.  See RVC Floor Decor, Ltd. v. Floor and Decor Outlets of Am., Inc., 527 F. Supp. 3d 305, 321-22 (E.D.N.Y. 2021).

[2] Judge Hurley's Memorandum & Order is also available on the docket at ECF No. 147.  Going forward, the Court will refer to this case by its Reporter citation.

2

A. <u>Defendant's Prior Litigation</u>

Plaintiff's judicial estoppel motion revolves around five "trademark enforcement actions brought by [Defendant]" in other jurisdictions (the "Unrelated Cases"). (Support Memo, ECF No. 197-9 at 3, <u>attached to</u> Motion.) Plaintiff contends that the Unrelated Cases "all mimic the same fact patterns," that is, "[a]n entity with a business and trade name strikingly similar to Plaintiff [and Defendant], is sued by [Defendant]." (<u>Id.</u>) In the Unrelated Cases, Defendant argues that the opposing "entity's name is 'confusingly similar' to [Defendant's], and the entity's business is the same as [Defendant's] business." (<u>Id.</u>) Plaintiff alleges that Defendant repeatedly changes the description of its business "to fit its purposes in each litigation," then argues "that consumer confusion is likely to occur, and that if an injunction is not granted, [Defendant] will suffer irreparable harm." (<u>Id.</u>) According to Plaintiff, in each case, Defendant "presented [] facts and [] legal arguments -- specifically concerning the <u>Polaroid</u> factors -- as needed and tailored to benefit it in the role of senior user seeking to enforce its trademark against these junior users." (<u>Id.</u>)

1. <u>F&D v. Floor & Home Decor, Inc.</u>

The first enforcement action was brought "against a 'retail flooring-products store' doing business under the name 'Floor & Home Decor' ('FHD')." (<u>Id.</u> at 3-4.) Defendant argued

3

that FHD's mark was confusingly similar to Defendant's. (Id. at 4.) Unlike in the present action, where Defendant describes itself as a "a large, warehouse-style store," Defendant described itself as a "retail store[] featuring flooring materials and related home-improvement accessories." (Id. (alteration in original).) Regarding confusion, Defendant argued that FHD's mark

> [i]s likely to cause confusion and to deceive consumers and the public regarding the source of its services, and to dilute and tarnish the distinctive quality of [Defendant's] marks. Further, [FHD's] use of such a confusingly similar trademark is already causing actual confusion in the marketplace between the parties' stores and, upon information and belief, [FHD] have adopted their mark with the intention of causing such confusion between the parties' stores and of trading on the goodwill in [Defendant's] marks.

(Id.)

### 2. F&D v. Home Decor by Victoria, Inc.

In the second Unrelated Case, Defendant "brought [an] action against another 'retail flooring products store' doing business under the mark 'Floors & Decor'" ("Floors"). (Id.) Defendant "argued that [Floors'] mark '[was] confusingly similar' to [Defendant's] mark, and again . . . described itself as a 'retail store[] featuring flooring materials and related home-improvement accessories." (Id. at 5.)

4

### 3. F&D v. Decor & Flooring, LLC.

In the third Unrelated Case, Defendant brought an action against Decor & Flooring "which provided 'retail sales of flooring products, tiles, and other home furnishing accessories, such as granite countertops." (Id. at 5.) Defendant described its business in this case as comprising of "retail stores featuring flooring products, tiles, and related home-improvement accessories, such as granite countertops." (Id. at 6.) Defendant argued that Decor & Flooring's use of Defendant's mark was "likely to cause confusion and to deceive consumers and the public regarding the source of its services, and to dilute and tarnish the distinctive quality of" Defendant's mark. (Id.)

### 4. F&D v. Granite Floor & Decor

Granite Floor & Decor ("Granite Floor") was a company that provided "kitchen, bathroom, and related home remodeling services featuring granite countertops, tiles and flooring, and wood and porcelain flooring." (Id. at 6.) Defendant described its business in this case as comprising "retail stores featuring granite countertops, tiles and flooring, and wood and porcelain flooring." (Id.) Defendant argued that:

> [Granite Floor's] [] mark is confusingly similar to [Defendant's] marks. The FLOOR & DÉCOR portion of [Granite Floor's] mark is identical to [Defendant's] word mark; the term GRANITE is a generic term that has little weight in distinguishing the parties' marks. . . . Due to the similarity of the

5

>marks, internet searches for [Defendant's] stores and website mistakenly return search results directing consumers to [Granite Floor's] store and website. Further, [Granite Floor's] remodeling services involve the sale of the same kinds of products that [Granite Floor] sells through its stores and website and thus the parties' goods/services are very closely related, if not identical. . . . [Granite Floor's] use of the GRANITE FLOOR & DECOR mark and trade name on its store signs, website, and other marketing channels is likely to cause confusion among consumers with [Defendant's] stores and website . . . .

(Id. at 6-7.)

     5.    Floor Décor, LTD v. F&D

In the final action, Defendant "was initially a defendant in this [case]" which was "brought by a Texas entity identically-named to Plaintiff (other than an accent mark)." (Id. at 8.) The Texas entity was described as a "single showroom location" which provided "sales, installation and service of carpet, ceramic tile, wood floor, laminates, vinyl, stone, marble and granite floor coverings and related products." (Id.) Plaintiff contends that Defendant "asserted a counterclaim [in the Texas action], making identical arguments that it has made against Plaintiff" in the present case "and the exact opposite arguments it made as a plaintiff in the aforementioned cases." (Id. (emphases in original).) Specifically, Plaintiff asserts that Defendant claimed: (1) "Floor Decor's trademark was 'highly descriptive;'" (2) "that Floor Decor acquiesced to third-party use

6

of the words 'floor' and 'decor' and, therefore, had abandoned the mark;" (3) "that [Defendant's] mark is not confusingly similar to Floor Decor's mark 'since both the words and design elements are dissimilar and contain elements that will allow consumers to distinguish between them;" (4) Floor Decor's mark had "'not [acquired] secondary meaning sufficient for trademark protection;'" and (5) "laches." (Id. at 8-9.)

## PROCEDURAL HISTORY

I.  Judge Hurley's Preliminary Injunction Ruling

Plaintiff previously made this motion "during the hearing on Plaintiff's motion for a preliminary injunction." (Id. at 1.)  Judge Hurley denied Plaintiff's motion, primarily due to the inherent fact specific nature of the analysis required under the Polaroid factors in trademark cases such as the one at bar; specifically, Judge Hurley noted that:

> [J]udicial estoppel is a very harsh remedy. . . .
>
> In this case we obviously have a different scenario.  We have different jurisdictions.  Is that an important point?  No.  Is it a point? Yes, it is.  The major problem, though, with invoking judicial estoppel in this case I think involves the Polaroid factors.  The parties agree that confusion is pivotal, assuming there's secondary meaning that is established by the plaintiff or will be established at some point by the plaintiff and that's contested by the defense, at least at this juncture.

7

> We are going to get into the Polaroid factors which are multiple. The court is required to make very specific factual inquires [sic] and conclusions regarding each of the eight . . . Polaroid factors. . . .
>
> Then the next question is what were the factors that influenced the Polaroid factors' analysis in the five cases in Georgia and Texas? I don't know. I do know that in all probability they varied from case to case, and they were complex in their own stead. The problem I have, and this is addressed somewhat because when we talk about equitable -- judicial equity, the question is addressed to my discretion.
>
> Do I feel it would be appropriate for me to hamstring the defense to the extent that they can't present a large field of evidence? I don't. This is a nonjury trial. I'd like to hear the evidence. I'm not going to invoke judicial estoppel to somehow curb the evidence that would otherwise be presented to me.
>
> So the bottom line is plaintiff hasn't shown, to my satisfaction, that the doctrine of judicial estoppel, again primarily because of this problem with the Polaroid factors, has been appropriately laid. Over the objection of plaintiff's counsel, and I will say this too, there is a similarity in names here, but as we know under Polaroid that's important, but that's far from dispositive. That's the problem I'm having. . . .
>
> I believe that the defendant has the better side of the argument as to the issue of how I should exercise my discretion in this case. For the reasons indicated, I have declined to preclude the defendant from going into these particular areas under the doctrine of judicial estoppel.

Tr. of Preliminary Inj. H'rg, ECF No. 105-2 at 3:10, 4:14-5:2, 5:5-6:1, 6:7-12, <u>attached to</u> Motion to Quash Subpoenas.

II. Plaintiff's Motion

In the instant Motion, Plaintiff seeks to exclude Defendant's arguments pertaining to "evidence or arguments inconsistent with those asserted, and succeeded upon, in other litigation" based on equitable estoppel. (Support Memo at 1.) Defendant filed an opposition to Plaintiff's Motion. (See Opp'n, ECF No. 198.) Afterwards, Plaintiff filed a reply. (See Reply, ECF No. 199.)

ANALYSIS

I. Legal Standard

A. Motion *in Limine*

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine." Highland Cap. Mgmt., L.P. v. Schneider, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing Luce v. United States, 469 U.S. 38, 41 n.4 (1984)). Motions in limine "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Mango v. BuzzFeed, Inc., 316 F. Supp. 3d 811, 812 (S.D.N.Y. 2018) (quoting Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996)). In ruling on a motion in limine, evidence should be excluded, "[o]nly when [it] is 'clearly inadmissible on all potential grounds.'" United States v. Ceballo, No. 13-CR-0308,

9

2014 WL 4980554, at *1 (E.D.N.Y. Oct. 6, 2014) (quoting United States v. Paredes, 176 F. Supp. 2d 192, 193 (S.D.N.Y. 2001)).  In "considering a motion in limine, [the Court] may reserve judgment until trial, so that the motion is placed in the appropriate factual context." United States v. Chan, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002).  Moreover, the Court's ruling on "a motion in limine is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer." Id. at 341 (quoting Luce, 469 U.S. at 41).

    B.    Judicial Estoppel

Judicial estoppel "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting 18 MOORE'S FEDERAL PRACTICE § 134.30 (3d ed. 2000)); see also 18 C. Wright, A Miller, & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4477 (1981) ("Absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursing an incompatible theory."). The purpose of the doctrine of judicial estoppel is "to protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire, 532 U.S. at 749-50 (citations omitted).

"Courts have observed that '[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle.'" New Hampshire, 532 U.S. at 750 (alteration in original) (quoting Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982)). In determining whether to apply the doctrine of judicial estoppel, courts consider three factors: (1) that "a party's later position must be clearly inconsistent with its earlier position;" (2) that "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) that "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 750 (citations omitted).

"[T]he application of the judicial estoppel doctrine depends heavily on the 'specific factual context[]' before the court." Adelphia Recovery Tr. v. Goldman Sachs & Co., 748 F.3d 110, 116 (2d Cir. 2014) (quoting New Hampshire, 531 U.S. at 751. While previous positions can be "facially inconsistent, [the Second Circuit has] emphasized the need to 'carefully consider the contexts in which apparently contradictory statements are made to determine if there is, in fact, direct and irreconcilable

11

contradiction.'" United States v. Apple, Inc., 791 F.3d 290, 337 (2d Cir. 2015) (quoting Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 119 (2d Cir. 2004)) ("[C]ontext is particularly important.").

    C.    Likelihood of Confusion

In assessing the likelihood of confusion, courts in the Second Circuit refer to the factors articulated in Polaroid Corp. v. Polarad Elec. Corp., 287 F.2d 492 (2d Cir. 1961):

> (1) the strength of the plaintiff's mark; (2) the degree of similarity between the plaintiff's and defendant's mark; (3) the competitive proximity of the products sold under the marks; (4) the likelihood that the plaintiff will bridge the gap; (5) actual confusion; (6) the defendant's good faith, or lack thereof, in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the plaintiff's customers.

Capri Sun GmbH v. Am. Beverage Corp., 595 F. Supp. 3d 83, 145 (S.D.N.Y. 2022) (citing Polaroid, 287 F.2d at 495). The "evaluation of the Polaroid factors in not a mechanical process where the party with the greatest number of factors weighing in its favor wins. Rather, a court should focus on the ultimate question of whether consumers are likely to be confused." Tiffany & Co. v. Costco Wholesale Corp., 971 F.3d 74, 85 (2d Cir. 2020) (quoting Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 46 (2d Cir. 2000)). "[T]he Polaroid test . . . is a fact-intensive

12

inquiry that depends greatly on the particulars of each case." Kelly-Brown v. Winfrey, 717 F.3d 295, 307 (2d Cir. 2013)).

II. Discussion

    A. Allegedly Inconsistent Arguments Regarding the Likelihood of Confusion

Plaintiff's asserts that "[i]n this case, while [Defendant] vehemently argues [that] the Polaroid factors militate against a finding of . . . confusion," Defendant's "arguments are inconsistent with and . . . at odds with those it made and succeeded upon" in the Unrelated Cases. (Support Memo at 10.) Plaintiff's judicial estoppel request is threefold: (1) that Defendant should be "[j]udicially [e]stopped from [c]laiming [that] the [parties'] [m]arks are [d]issimilar"; (2) that Defendant should be judicially estopped from "[a]rguing [a]gainst the [p]roximity of the [parties'] [p]roducts and [s]ervices; and (3) that Defendant should be judicially estopped from "[a]rguing that [c]ustomer [c]onfusion is [u]nlikely." (Id. at 10-14.)

        1. Similarity in Trademarks

Plaintiff first contends that, here, Defendant "argues that, primarily due to the different typefaces used, the marks give distinct commercial impressions." (Id. at 11.) Plaintiff emphasizes that, in the Unrelated Cases, Defendant successfully argued that the marks in those cases "were 'confusingly similar' to [Defendant's] mark and this argument was adopted by the courts."

13

(Id.) Plaintiff contends that "this Court can easily conclude that [Defendant's] mark is more similar to Plaintiff's mark than it is/was to the marks of [the] other entities" in the Unrelated Cases. (Id. at 12.) Defendant argues that since "none of the marks and logos in the Unrelated Cases [were] identical to [Plaintiff's] Asserted Name . . . none of [Defendant's] statements in those cases concerning similarity is a direct and irreconcilable contradiction." (Opp'n at 5 (citation omitted).)

The similarity of trademarks is a fact-specific inquiry, and requires analysis of "the mark's overall impression on a consumer, considering the context in which the marks are displayed and the 'totality of factors that could cause confusion among prospective purchasers.'" Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 117 (2d Cir. 2006) (quoting Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir. 2005)). These marks must be considered in the fact-specific context in which they are presented to customers. See Kelly-Brown, 717 F.3d at 307.

Here, the Court agrees with Defendant that to judicially estop it from arguing that the parties' marks are dissimilar it would have to find as a matter of law that Defendant position is a direct and irreconcilable contradiction to what it argued previously. In reviewing the various marks presented in the Unrelated Cases and in the present case, the Court notes that they

14

vary in design, font, and color, and none is identical to Plaintiff's mark. Consequently, Defendant is not estopped from arguing in this case that the parties' marks are dissimilar.

### 2. The Proximity of the Products and Services

#### i. Geographic Proximity

Plaintiff highlights next that in one of the previous Unrelated Cases, Defendant successfully argued that a store "located approximately thirty (30) miles from [Defendant's] store" would likely "cause confusion among consumers between the parties' stores." (Support Memo at 12.) Plaintiff contends that, because of this argument, Defendant "should be estopped from arguing that its Farmingdale store, which is a mere 11 miles from [Plaintiff's] Syosset store and 14 miles from [Plaintiff's] Rockville Center store, is sufficiently remote not to cause confusion." (Id.) Defendant counters that "proper analysis of proximity demands consideration of [different] shopping environments" and that "[n]one of the parties in the [Unrelated Cases] [were], like [Plaintiff], an interior-design showroom that offered primarily design services and was willing to order 'higher-end' products for its customers." (Opp'n at 6.) Consequently, Defendant contends that its "statements in those cases concerning proximity of goods and services between [Defendant] and those unrelated third parties do no constitute a direct and irreconcilable contradiction." (Id. at 6-7 (citation omitted).)

15

Proximity of the parties' goods and services is a highly fact-intensive inquiry. See Kelly-Brown, 717 F.3d at 307. "Geographic proximity looks to the geographic separation of the products." Brennan's, Inc. v. Brennan's Rest, LLC., 360 F.3d 125, 134 (2d Cir. 2004). Geographic proximity, like market proximity, "seek[s] to determine whether the two products have an overlapping client base that creates a potential for confusion." Id.

Here, the parties dispute whether any of the stores in the Unrelated Cases were similarly situated to Plaintiff, that is, Defendant argues that none of the parties in the Unrelated Cases were "interior-design showroom[s]" offering "primarily design services," while Plaintiff contends it has evidence to the contrary. Notwithstanding the parties' dispute, because of the fact-intensive inquiry required under Polaroid, at this stage, the Court will not judicially estop Defendant from arguing that the geographic proximity of the parties' respective stores is distant enough to avoid confusion.

ii. Market Proximity

Plaintiff next states that Defendant "argues that it is unlike [Plaintiff] because while it is a 'large warehouse-style store,' Plaintiff . . . is 'by contrast, a small interior-design company.'" (Support Memo at 12.) Plaintiff contends that the Unrelated Cases demonstrate that Defendant "continually shift[s] [the] description of its business to fit its needs." (Id.) For

example, Plaintiff emphasizes that "when suing 'retail flooring-products stores,' [Defendant] describe[s] itself as 'retail stores featuring flooring materials and related home-improvement accessories.'" (Id.) Similarly, when suing stores that describe their business as providing granite countertop or wood and porcelain flooring, Defendant changes its description to include those products as part of its business offerings. (Id. at 12-13.) Plaintiff notes that "[o]nly as a defendant, where it attempts to distance itself from the senior user (like [the present] action), does [Defendant] describe itself as a 'large, warehouse-style store,' or 'big box store.'" (Id. at 13.) Plaintiff avers that because Plaintiff's "business easily fits within the market description [Defendant] described in the foregoing cases" Defendant "should be estopped from arguing its products and [Plaintiff's] products are not in related areas of commerce." (Id.) Defendant counters that Defendant's "descriptions of its stores and products in Unrelated Cases and this case . . . do not present a direct and irreconcilable contradiction" since all of its self-descriptions "contain the same elements," that is, that Defendant "is a retail store that sells flooring and related products, occasionally with different example products and sub-categories listed." (Opp'n at 7.) Defendant contends that the "addition of the word 'warehouse' to its self-descriptions in this case does not render it inconsistent with any of its other self-

17

descriptions," and instead "[i]t is simply an additional detail concerning the size of its retail stores." (Id. at 7-8.)

Market proximity is an inquiry into whether the parties are in related areas of commerce. Brennan's, 360 F.3d at 134. Like geographic proximity, the relevant inquiry is whether the "two products have an overlapping client base that creates a potential for confusion." Id.

In reviewing the descriptions provided by Defendant in the instant case and in the Unrelated Cases, the Court finds no direct, irreconcilable contradiction that would warrant imposition of judicial estoppel. Instead, the Court agrees with Defendant in that Defendant has consistently described itself as a retail store that sells a variety of flooring and related products. Since the Polaroid factors are an inherently factual inquiry, elaborating on its description when necessary to outline the various products it sells or the size of its store in comparison to other parties seems entirely appropriate when necessary based on the facts of the case.

### 3. Customer Confusion

Finally, Plaintiff argues that, in the Unrelated Cases, Defendant successfully argued that trade names similar to Plaintiffs, signage less similar to Plaintiff's, and business identical to Plaintiff's, would likely cause customer confusion. (Support Memo at 13.) For these reasons, Plaintiff contends that Defendant should be "estopped from arguing that consumer

18

confusion" between the parties is unlikely. (Id. at 14.) Defendant highlights that Plaintiff "fails to address the issue of unfair advantage" in this arm of its motion and that Plaintiff "has no genuine interest in [Defendant's] statements in the prior Unrelated Cases and . . . has not relied upon them in this litigation to its detriment." (Opp'n at 9.) Plaintiff addresses this argument in its Reply, arguing that Defendant has "caused the permanent closure of four other businesses based upon its argument that the marks under which those businesses operated, along with the proximity of the goods and services offered, would cause consumer confusion that would irreparably harm [Defendant]." (Reply at 4-5.) Plaintiff contends that here, Defendant seeks an unfair advantage in that it intends to make directly irreconcilable arguments to those made in the prior cases "and hopes the jury accepts" these arguments. (Id. at 5.)

Here, for substantially the same reasons articulated by Judge Hurley in his previous denial of Plaintiff's motion, the Court finds that given the fact-intensive inquiry required under the Polaroid factors, it would be inappropriate in this case to judicially estop Defendant from making relevant arguments in this case based upon the unique facts of this case.[3] Similarly, the

---

[3] To the extent that Plaintiff argues that Judge Hurley's ruling is not helpful because this case will be heard by a jury, (see Support Memo at 1; Reply at 1), Plaintiff offers no caselaw as to why this should weigh in its favor with regard to imposing judicial estoppel. The Court, in disregarding this argument, restricts its analysis to the elements of judicial estoppel articulated above.

19

Court is unconvinced by Plaintiff's arguments that Defendant has made direct, irreconcilable statements in the Unrelated Cases.

B.  Plaintiff's Request to Present Evidence from the Prior Litigations

The Court reserves decision on whether Plaintiff may offer evidence from the prior litigations at trial. The Court will be in a better position to consider the relevance of such evidence at trial, as well as whether it would violate any of the tenets articulated in Rule 403.

CONCLUSION

For the stated reasons, **IT IS HEREBY ORDERED** that the Defendant's Motion in limine (ECF No. 197) based on Judicial Estoppel is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: April 10, 2023
       Central Islip, New York

---

The Court notes further that Judge Hurley primarily based his decision to deny Plaintiff's original motion on the fact specific inquiry required under the Polaroid factors.