UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
RVC FLOOR DECOR, LTD.,

                 Plaintiff,            <u>MEMORANDUM & ORDER</u>
                                        18-CV-6449 (JS)(ARL)

    -against-

FLOOR AND DECOR OUTLETS OF
AMERICA, INC.,

                 Defendant.
-------------------------------X
APPEARANCES
For Plaintiff:       Craig B. Sanders, Esq.
                    Jonathan Mark Cader, Esq.
                    James H. Freeman, Esq.
                    Sanders Law Group
                    333 Earle Ovington Boulevard, Suite 402
                    Uniondale, New York  11530

                    Erica Carvajal, Esq.
                    Sanders Law LLC
                    100 Garden City Plaza, Suite 500
                    Garden City, New York  11530

For Defendant:       Bryan J. Wolin, Esq.
                    H. Forrest Flemming, III, Esq.
                    Robert Nathan Potter, Esq.
                    Kilpatrick Townsend & Stockton LLP
                    1114 Avenue of the Americas, 21st Floor
                    New York, New York  10036

                    Richard Charles Henn, Jr., Esq.
                    Kilpatrick Townsend & Stockton LLP
                    1100 Peachtree Street, Suite 2800
                    Atlanta, Georgia  30309

SEYBERT, District Judge:

    RVC Floor Decor, Ltd., (the "Plaintiff") initiated this

trademark infringement case against Floor & Decor Outlets of

America, Inc., (the "Defendant") pursuant to Section 43(a) of the

Lanham Act, New York common law, and New York General Business Law Section 360-l.[1]  Presently before the Court is Defendant's Motion for Reconsideration of the Court's previous denial of its Motion for Judgment as a Matter of Law (the "Reconsideration Motion") (ECF No. 250).  Plaintiff filed opposition to the Motion on April 17, 2023 (ECF No. 252), to which Defendant filed a Reply (ECF No. 253).  At the April 18, 2023 hearing on the reconsideration motion, the Court granted reconsideration and upon reconsideration GRANTED Defendant's Motion for Judgment as a Matter of Law on Plaintiff's common law unfair competition claim, and Plaintiff's entitlement to punitive damages under the same.  Since Plaintiff's remaining remedies were equitable in nature, and not legal, Defendant's request that the jury be struck was also GRANTED.  The Court's reasoning for its rulings follows.

BACKGROUND

I.  <u>Facts</u>

        For a thorough recitation of the factual and procedural background of this case, the Court refers the parties to Judge

---

[1] Plaintiff also brought claims pursuant to New York General Business Law Section 349, which were dismissed during the summary judgment stage of this case.  <u>See</u> <u>RVC Floor Decor, Ltd. v. Floor and Decor Outlets of Am., Inc.</u>, 527 F. Supp. 3d 305, 321–22 (E.D.N.Y. 2021).  This Memorandum & Order, issued by then presiding Honorable Denis R. Hurley, is also available on the docket at ECF No. 147.  Going forward, the Court will refer to this case by its Reporter citation.

Hurley's March 18, 2021 Memorandum & Order denying Plaintiff's motion for summary judgment and denying in part and granting in part Defendant's cross-motion for summary judgment. See RVC Floor Decor, Ltd., 527 F. Supp. at 312-15.

II.   Defendant's Initial Motion for Judgment as a Matter of Law

On April 14, 2023, Defendant orally moved for Judgment as a matter of law on all of Plaintiff's claims and arguments were presented on the record. Regarding all claims, Defendant argued Plaintiff was required to, but could not establish, that its "FLOOR DECOR" mark had achieved secondary meaning before July 2015. Additionally, Defendant contended that Plaintiff had failed to adduce evidence in its case-in-chief that established the bad faith element of its New York common law unfair competition claim, and that Plaintiff had failed to present any evidence of dilution regarding its General Business Law ("GBL") 360-l anti-dilution claim. Moreover, Defendant argued that Plaintiff's claims for punitive damages should be dismissed because Plaintiff could not establish that Defendant's conduct met the requisite standard. Finally, on the issue of disgorgement of profits under the Lanham Act, Defendant highlighted that it was an equitable remedy to which Plaintiff had not established an equitable right.

Ruling from the bench, the Court denied Defendant's Motion for Judgment as a Matter of Law noting that Plaintiff had presented evidence for its claims. (See Order, ECF No. 249, in

toto.)   Specifically, the Court determined that while Plaintiff had failed to present certain categories of relevant evidence regarding secondary meaning, no single factor was determinative. (Id. at 4.)   Consequently, since Plaintiff had presented evidence regarding its long-term exclusive use of the "FLOOR DECOR" mark, as well as, inter alia, evidence regarding sales success, the Court could not, as a matter of law, determine that there was no legally sufficient evidentiary basis for a reasonable jury to find that Plaintiff had established secondary meaning.   (Id.)   The Court also determined that Plaintiff had successfully introduced relevant evidence at trial through its store manager regarding potential blurring for its anti-dilution claims.   (Id. at 6.) Additionally, the Court noted that "[r]esolution of [an unfair competition claim] requires a complex factual analysis of a variety of factors" and that given the Court could not rule "as a matter of law that there [was] no legally sufficient evidentiary basis for a reasonable jury to find bad faith intent on Defendant's part," this matter was better left to the jury.   For similar reasons, the Court determined that the issue of punitive damages was also best left to the determination of the jury.   (Id. at 6-7.)   The Court noted that Plaintiff had presented evidence that included, among other things, Defendant's actual knowledge of Plaintiff's mark prior to its entry into the relevant geographical area.   (Id.)

4

III. <u>The Reconsideration Motion</u>

In the instant motion, Defendant argues that partial reconsideration of the Court's Order is warranted as to Plaintiff's (1) common law unfair competition claim, and (2) punitive damages claim. (Support Memo., ECF No. 250-1 at 1, <u>attached to Motion</u>.) Additionally, Defendant argues that should its Reconsideration Motion be granted then the Court should strike the jury since Plaintiff's disgorgement of profits remedy is equitable, and not legal, in nature. (Reply at 7.) Plaintiff opposed the Motion.

<u>DISCUSSION</u>

I. <u>Legal Standard</u>

I. <u>Motion for Reconsideration</u>

The decision to grant or deny a motion for reconsideration is "committed to the sound discretion of the district court." <u>Wilder v. News Corp.</u>, No. 11-CV-4947, 2016 WL 5231819, at *3 (S.D.N.Y. Sept. 21, 2016) (internal quotation marks omitted) (quoting <u>Liberty Media Corp. Vivendi Universal, S.A.</u>, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012)). "A motion for reconsideration should be granted only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" <u>Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.</u>, 729 F.3d 99, 104 (2d Cir. 2013) (quoting <u>Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.</u>,

956 F.2d 1245, 1255 (2d Cir. 1992)); see also Hernandez v. Caliber Home Loans, No. 16-CV-3755, 2016 WL 6561415, at *1 (S.D.N.Y. Oct. 24, 2016) ("A motion for reconsideration may be granted where the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words[,] that might reasonably be expected to alter the conclusion reached by the Court." (alteration in original) (citation omitted)).  A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted) (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998)).

II.    Motion for Judgment as a Matter of Law

A court may grant judgment as a matter of law pursuant to Federal Rule of Civil Procedure ("Rule") 50(a) "if it concludes that the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to make a particular finding."  Okraynets v. Metro. Transp. Auth., 555 F. Supp. 2d 420, 444 (S.D.N.Y. 2008) (citing Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998)). "Under Rule 50, judgment as a matter of law is appropriate where 'there is no legally sufficient evidentiary basis for a reasonable jury to find for' a party."  Merrill Lynch Interfunding, Inc. v.

<u>Argenti</u>, 155 F.3d 113, 120 (2d Cir. 1998) (quoting FED. R. CIV. P.
50(a)(1)).  As such, judgement as a matter of law may be granted
only where "viewed in the light most favorable to the nonmoving
party, the evidence is such that, without weighing the credibility
of the witnesses or otherwise considering the weight of the
evidence, there can be but one conclusion as to the verdict that
reasonable men could have reached." <u>Id.</u> (quoting <u>Samuels v. Air
Transp. Local 504</u>, 992 F.2d 12, 14 (2d Cir. 1993)) (further
citation omitted).

III. <u>Motions to Strike Jury Demand</u>

Pursuant to Rule 39(a)(2), a court may strike a jury
demand "on motion or on its own [if it] finds that on some or
all of those issues there is no federal right to a jury trial."
FED. R. CIV. P. 39(a)(2).

II. <u>Analysis</u>

I. <u>Motion for Reconsideration</u>

Regarding Plaintiff's unfair competition claim,
Defendant argues: (1) that Second Circuit law has held that
"[p]rior knowledge of a plaintiff's mark . . . is insufficient, as
a matter of law, to show an intent to capitalize on the plaintiff's
goodwill and reputation;" (2) that "Plaintiff cannot carry its
burden of proving Defendant intended to capitalize on Plaintiff's
reputation and goodwill by calling out things that Defendant
hypothetically could have done to avoid a dispute with Plaintiff;"

7

and (3) that "controlling authority . . . provides that a defendant's decision to continue -- or even expand -- its purported infringement after a lawsuit is filed cannot support a finding of bad faith as long as the merits of the plaintiff's claims are open to honest doubt." (Support Memo at 4, 7, 8.) As to punitive damages, Defendant avers that the Court did not clearly articulate the relevant legal standard. (Id. at 12.)

Here, the Court finds that Defendant's reconsideration motion is warranted due to controlling decisions that were initially overlooked by the Court and to avoid manifest injustice. Having granted the motion for reconsideration, the Court considers de novo whether Defendant is entitled to judgment as a matter of law on Plaintiff's New York common law unfair competition claim and/or Plaintiff's punitive damages request for Defendant's alleged violation of the same.

## II.   Plaintiff's "Bad Faith" Evidence

Plaintiff articulates ten categories of "bad faith" evidence which it contends are both legally sufficient: (1) "to support the element of bad faith under common law unfair competition"; and (2) "to qualify for an award of punitive damages." (Opp'n at 8, 24.) The "legally sufficient facts" include: (1) that "Defendant's junior mark Floor & Decor is virtually identical to Plaintiff's senior mark Floor Decor" ("Fact One"); (2) the parties' market proximity ("Fact Two");

8

(3) Defendant's "actual notice of Plaintiff's senior mark" which it learned of "in 2012" ("Fact Three"); (4) Defendant's failure "to contact Plaintiff in order to negotiate a co-existence agreement or other arrangement" ("Fact Four"); (5) the parties' relative geographic proximity and Defendant's decision to open its "flagship New York retail store" in Long Island as opposed to somewhere else within New York state ("Fact Five"); (6) Defendant's "aggressive[] move[] into Nassau County with limited notice" to Plaintiff which comprised of "a massive advertising campaign" ("Fact Six"); (7) Defendant's failure to provide, either in its advertisements, promotion, or signage, "a written disclaimer to consumers" to combat potential confusion between the parties ("Fact Seven"); (8) Defendant's relative size and financial resources compared to Plaintiff ("Fact Eight"); (9) Defendant's continued use of its trademark "in the relevant geographic region" after the Court's summary judgment decision in which Judge Hurley found "that Plaintiff's claim for secondary meaning was colorable and its allegations of bad faith were triable to a jury" ("Fact Nine"); and (10) Defendant's expansion of its operations within the relevant geographic area after the Court's summary judgment decision ("Fact Ten"). (Id. at 8-9.)

From the factual record, Plaintiff posits that "a reasonable juror could infer bad faith at the end of Plaintiff's case-in-chief because": (1) "Defendant's failure to contact

Plaintiff and work out a co-existence agreement in advance of extreme geographic competition . . . shows Defendant's intent to promote, rather than avoid, public confusion as between the two marks;" (2) "Defendant's failure to include disclaimers in its advertisements . . . demonstrates Defendant's willful disregard for the public interest in avoiding mass instances of actual confusion;" (3) "Defendant's rapid, barely announced surge into Nassau County as its first flagship store in New York state, rather than in some other county outside of Long Island, creates a reasonable inference that it was attempting to capitalize on the good will and reputation" of Plaintiff; (4) Defendant had yet to put on a case in which it demonstrated that "it harbored an honest belief in its legal position" that Plaintiff's tradename "never acquired any secondary meaning;" and (5) "Defendant's post-notification actions, viewed in their totality, create a reasonable inference that Defendant intended to leverage the public confusion caused by its extreme geographic competition with Plaintiff in order to run Plaintiff out of business rather than compete on the merits." (Id. at 9.) Plaintiff also argues that it has "adduced competent evidence showing that in 2003, Defendant copied Plaintiff's 'Floor Decor' Logo from Plaintiff's 2002 New York Times advertisements, which were widely distributed." (Id. at 7 n.2.)

Defendant counters that Plaintiff's bad faith evidence consists of two, legally insufficient facts: (1) Defendant's prior knowledge of Plaintiff; and (2) Defendant's decision to open new stores after this litigation began.  (Reply at 4-6.)  Defendant expounds that only Facts Three, Eight, and Nine are facts which Second Circuit courts regularly discuss in conjunction with bad faith and all have been found to be legally insufficient as a matter of law to support such a finding.  (Id. at 4.)  Moreover, Defendant avers that Plaintiff "conflates its likelihood-of-confusion evidence with evidence of bad faith" in asserting Facts One, Two and Five, "with Fact [Five] essentially being the 'geographic proximity' Polaroid factor."  (Id. (emphasis in original)).  As to Facts Four and Seven, Defendant notes that they are in fact "hypothetical and irrelevant actions Defendant could have taken to avoid a dispute" and that Plaintiff has failed to "find a single case in which a court found a failure to notify or failure to use a disclaimer as evidence of bad faith."  (Id. at 5.)  Furthermore, Defendant refutes Fact Six in that it "is partly false, as Plaintiff adduced no evidence that there was 'limited notice.'"  (Id.)  Again, Defendant highlights that Plaintiff "fails to cite a single case finding that even 'aggressive' marketing is evidence of bad faith intent to capitalize on Plaintiff's goodwill and reputation or to deceive." (Id.)

11

"Prior knowledge of a senior user's mark does not, without more, create an inference of bad faith." Playtex Prods., Inc. v. Georgia-Pacific Corp., 390 F.3d 158, 166 (2d Cir. 2004) (emphasis added); see also Lang v. Ret. Living Publ'g Co., 949 F.2d 576, 583-84 (2d Cir. 1991) (holding that Defendant's "prior knowledge of [plaintiff's] trade name does not give rise to a necessary inference of bad faith, because adoption of a trademark with actual knowledge of another's prior registration of a very similar mark may be consistent with good faith"); W.W.W. Pharm. Co. v. Gillette Co., 984 F.2d 567, 575 (2d Cir. 1993) (finding that prior knowledge of another's prior registration of a similar mark "does not necessarily give rise to an inference of bad faith" and noting that plaintiff had not shown bad faith on defendant's part because it had failed to "put forth any evidence that [defendant] intended to promote confusion between the products or appropriate [plaintiff's] good will").

Savin Corporation v. Savin Group further illustrates this point; in that case, the plaintiff asserted that the defendants acted in bad faith because: (1) defendants' founder "had knowledge of [plaintiff's] products and services for approximately ten years;" (2) defendants "never performed a search or investigation prior to adopting and launching their trade names incorporating" plaintiff's mark; and (3) defendants' "[e]ngineers were aware of [p]laintiff's 'savin.com domain name prior to

12

registering their thesavingroup.com and savinengineers.com domains.'" 391 F.3d 439, 460 (2d Cir. 2004). The district court found that defendants did not act in bad faith, specifically noting that the defendants

> had no reason to believe that they might be infringing another's marks[,] because they were not copying the mark from another entity. In fact, [defendants'] founder was not even aware of [plaintiff's] existence at the time he adopted his mark, and arrived at the name 'Savin' independently by reversing the spelling of his nickname 'Nivas.'

Id. Additionally, the district court "observed, [that] even if [d]efendants had conducted a trademark search, they would have discovered only that [plaintiff's] mark was registered for photocopiers and related goods and services and, hence, would have had no reason to believe that using the name for professional engineering services would infringe [plaintiff's] marks." Id. In affirming the district court, the Second Circuit, viewing the totality of plaintiff's evidence, held that defendants' failure "to perform an official trademark search" did not "standing alone prove that [d]efendants acted in bad faith." Id. Moreover, the Second Circuit noted that prior knowledge of a senior user's trademark was not "inconsistent with good faith." Id.

Further, "a defendant's refusal to abandon a mark in the face of a cease and desist letter cannot demonstrate bad faith standing alone" because "[i]f a defendant reasonably believes its

mark does not infringe plaintiff's, [it] does not act with the [requisite] intention of capitalizing on plaintiff's reputation and goodwill." E.A. Sween Co. v. Big City Deli Express Corp., No. 14-CV-6031, 2016 WL 5874998, at *6 (E.D.N.Y. Oct. 8, 2016) (quoting O'Keefe v. Ogilvy & Mather Worldwide, Inc., 590 F. Supp. 2d 500, 525 (S.D.N.Y. 2008)). As noted by the Supreme Court in Straus v. Notaseme Hosiery Company:

> [T]he defendants' persistence in their use of the design after notice proves little or nothing against them. They had been advertising their goods by name and using the design in connection with the name. The natural interpretation is not that they wanted to steal the plaintiff's good will, of which they then learned for the first time, but that they wished to preserve their own. . . . If the defendants' conduct was a wrong, . . . it was a wrong knowingly committed, but no further inference against the defendants can be drawn from the fact.

240 U.S. 179, 181-82 (1916); see also Hi-Tech Pharmacal Co. v. Hi-Tech Pharms., Inc., No. 05-CV-2674, 2007 WL 1988737, at *11 (E.D.N.Y. July 5, 2007) (finding that "defendant's continued use of its mark after [receipt of] cease and desist letters cannot by itself constitute evidence of bad faith" and that "plaintiff . . . presented no evidence that defendant's persistence in the use of its mark during the course of [the] litigation represent[ed] anything but a good faith belief that it [was] entitled to do so because plaintiff's mark is not protectible"); Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC,

14

335 F. Supp. 3d 566 (S.D.N.Y. 2018) (finding that plaintiff's main argument as to bad faith "appear[ed] to be that defendants continued to use the contested marks after receiving a cease and desert letter" and that "[t]his argument misse[d] the mark" since it "has long been held that 'defendant's persistence in their use of the design after notice proves little or nothing against them'" (quoting Strauss, 240 U.S. at 181-82)); Real News Project, Inc. v. Indep. World Television, Inc., No. 06-CV-4322, 2008 WL 2229830, at *21 (S.D.N.Y. May 27, 2008) (finding that the defendant's "stubborn insistence that it could not be legally prevented from using the" alleged infringing mark was not evidence of defendant's bad faith).

Here, in view of the foregoing the Court finds that Plaintiff has not, as a matter of law, met its burden in establishing that the Defendant acted with bad faith. Moreover, since Plaintiff's common law unfair competition claim requires Plaintiff to demonstrate some showing of bad faith on the part of the Defendant, this failure is fatal to Plaintiff's unfair competition claim. Sly Magazine, LLC v. Weider Publ'ns L.L.C., 346 F. App'x 721, 723 (2d Cir. 2009) ("To prevail on a New York unfair competition claim . . . there must be some showing of bad faith on the part of the defendants") see also WM Int'l, Inc. v. 99 Ranch Mkt. #601, 329 F.R.D. 491, 499 (E.D.N.Y. Jan 8, 2019) ("[W]hile there is no complete list of activities which constitute unfair competition under New York law, the essence of an unfair

competition claim is that one may not act in bad faith to misappropriate the skill, expenditures, and labor of another" (quoting CA, Inc. v. Simple.com, Inc., 621 F. Supp. 2d 45, 53 (E.D.N.Y. 2009))). Regardless, as detailed below, Plaintiff's bad faith evidence is also insufficient, as a matter of law, to establish a right to punitive damages pursuant to its state law claim.[2]

III.   Punitive Damages

"[T]he standard for imposing punitive damages is a strict one and punitive damages will be awarded only in exceptional cases . . . ." Marinaccio v. Town of Clarence, 20 N.Y.3d 506, 511 (2014). "[A] plaintiff is entitled to punitive damages where the wrongdoer's actions amount to willful or wanton negligence, or recklessness, or where there is 'a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'" Chauca v. Abraham, 30 N.Y.3d 325, 329 (2017) (quoting Home Ins. Co. v. Am. Home Prods. Corp., 75 N.Y.2d 196, 203-04 (1990)); see also Ross v. Louise Wise Servs., Inc., 8 N.Y.3d 478, 489 (2007) ("Punitive damages are permitted when the defendant's

---

[2] Although Plaintiff requests disgorgement of Defendant's profits under both Federal and state law, the inability to establish an entitlement to punitive damages is also, effectively, fatal to Plaintiff's unfair competition claim given that Plaintiff "cannot obtain double recovery of profits in the event profits are awarded under the Lanham Act." (Pl's. Statement of Damages, ECF No. 225 at 2.)

wrongdoing is not simply intentional but 'evince[s] a high degree of moral turpitude and demonstrate[s] such wanton dishonesty as to imply a criminal indifference to civil obligations. . . .  The misconduct must be exceptional, 'as when the wrongdoer has acted maliciously, wantonly, or with a recklessness that betokens an improper motive or vindictiveness . . . or has engaged in outrageous or oppressive intentional misconduct or with reckless or wanton disregard of safety or rights."); Prozeralik v. Capital Cities Commc'ns, 82 N.Y.2d 466, 479 (1993) (clarifying "for future cases" that "[p]unitive damages are awarded in tort actions '[w]here the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime'" and that "'[t]here must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton'" (quoting Prosser and Keeton, Torts § 2, at 9-10 (5th ed. 1984))).

The Second Circuit has observed that New York's Appellate Divisions "are divided over whether punitive damages must be shown by clear and convincing evidence or a preponderance of the evidence." In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., 725 F.3d 65, 127 n.49 (2d Cir. 2013).  However, more recent case law has applied the clear and convincing standard.

Compare Randi A.J. v. Long Island Surgi-Ctr., 46 A.D.3d 74, 86 (2d Dep't 2007) (requiring clear and convincing evidence); Munoz v. Puretz, 301 A.D.2d 382, 384 (1st Dep't 2003) (requiring clear and convincing evidence), with Matter of Seventh Jud. Dist. Asbestos Litig., 190 A.D.2d 1068, 1069 (4th Dep't 1993) (requiring preponderance of the evidence). See also Lexington Furniture Indus., Inc., v. The Lexington Co., AB, No. 19-CV-6239 (S.D.N.Y. Oct. 24, 2022), Hr'g Tr. (ECF No. 221), at 626:23-627:2 (charging the jury that it "may . . . award punitive damages for plaintiff's New York common law unfair competition claim if [it] conclude[s] by clear and convincing evidence that defendant's conduct has constituted gross, wanton, or willful fraud or other extremely unethical conduct"); Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 526 (S.D.N.Y. 2011) ("[T]he burden of proof for punitive damages" under New York law "is 'clear and convincing evidence.'" (quoting Randi A.J., 46 A.D.3d at 86))).

Here, even if Plaintiff had adduced sufficient evidence of bad faith to allege a prima facie case of unfair competition, which the Court has already found it has not, the Court finds that Plaintiff has not met its evidentiary burden in establishing, as a matter of law, its entitlement to punitive damages.[3]  None of

---

[3] The Court's finding in this regard remains the same whether it applies the "clear and convincing" standard of proof or "preponderance of the evidence."

Plaintiff's case-in-chief evidence demonstrates that Defendant acted in a manner that amounts to willful or wanton negligence, or recklessness, or conscious disregard of the rights of others. Plaintiff highlights its previously articulated ten categories of bad faith evidence and contends that these facts, taken in their totality, demonstrate "[a] level of callous disregard[] [that] . . . marks the quintessential example of reckless disregard that can only be remedied by punitive damages." As previously noted, Plaintiff's case-in-chief evidence on this issue primarily relies upon: (1) Defendant's prior knowledge of Plaintiff's mark; and (2) Defendant's continued use of its mark, including Defendant's expansion of its business on Long Island, during this litigation. The Second Circuit has already determined, however, that these facts, without more, cannot demonstrate bad faith; consequently, additional facts are needed.

Regarding Defendant's prior knowledge of Plaintiff, the parties stipulated that such knowledge existed as of 2012, six years <u>after</u> Defendant had already "obtained its first federal trademark registration for FLOOR & DECOR." (Stipulation of Facts, ECF No. 238.) It cannot be stated therefore that Defendant adopted its mark with the intent to capitalize on Plaintiff's reputation and goodwill and any confusion between the parties' products; moreover, Plaintiff offered no evidence tending to establish otherwise. Plaintiff's contention it had "adduced competent

19

evidence showing that in 2003, Defendant copied Plaintiff's 'Floor Decor' Logo from Plaintiff's 2002 New York Times' advertisements, which were widely distributed" is unsubstantiated conjecture. Indeed, there was no evidence introduced by Plaintiff establishing either that Defendant had seen the New York Times' advertisements in 2002 or that the advertisements were circulated outside the tri-state metropolitan area. (April 11, 2023 Hr'g Tr. at 200:9-21.)

Plaintiff's contention that Defendant's continued use of its federally registered trademark during the course of this litigation evinced "callous disregard" for Plaintiff's rights is hyperbole. Plaintiff avers that Defendant's subsequent actions after Judge Hurley's summary judgment decision, placing Defendant on notice that "Plaintiff's claim for secondary meaning was colorable and its allegations of bad faith were triable to a jury," evidence a level of bad faith that entitles Plaintiff to punitive damages because Defendant "continued to aggressively exploit Plaintiff's senior mark in the relevant geographic region." However, Judge Hurley ultimately denied Plaintiff's summary judgment motion. See RVC Floor Decor, Ltd., 527 F. Supp. 3d at 312-13. Specifically, Judge Hurley found that "there [were] genuine issues of material fact as to whether Plaintiff's mark obtained a secondary meaning by 2015" and that "[a] rational trier of fact could . . . find in Defendant's favor on this issue." Id.

Similarly, on the issue of bad faith and on a different record than what Plaintiff produced in its case-in-chief,[4] Judge Hurley stated that "Defendant may have the better of the" bad faith argument.  Id. at 328.  Consequently, Defendant's subsequent decisions to continue using its FLOOR & DECOR mark and to expand its operations on Long Island cannot be said to evince callous disregard for Plaintiff's rights.  On the contrary, the record evidence establishes that Defendant owns a federally registered trademark in its FLOOR & DECOR mark whereas Plaintiff's mark was, and remains, unregistered.  It was, and remains, Plaintiff's burden to establish that its mark is even entitled to protection.  In its case-in-chief, Plaintiff adduced no evidence that Defendant's persistent use of its mark, or its opening of new stores in the relevant geographic area, was attributable to callous or reckless disregard for Plaintiff's rights, as opposed to Defendant's honest belief that it was entitled to continue using its mark in the face

---

[4] On summary judgment, Plaintiff produced five categories of bad faith evidence: (1) "Defendant's discovery of Plaintiff's mark in 2012;" (2) Defendant's "Google AdWords purchase of the 'floor decor' term (among others) . . . in 2018;" (3) the "failure to use 'negative keywording' in those AdWords;" (4) "the decision to open a 'Floor & Decor' store on Long Island in 2018;" and (5) "the failure to advertise this location until ten days before its opening."  Conversely, during its case-in-chief, Plaintiff offered no evidence regarding Defendant's Google AdWords practices.  Further, the extent to which Plaintiff successfully adduced evidence that Defendant deliberately delayed advertising its Farmingdale Store opening in 2018 until ten days beforehand is debatable.

of Plaintiff's legal challenge.  Indeed, Judge Hurley's summary judgment order contained language that may have bolstered Defendant's belief that it would ultimately prevail.  Plaintiff's case-in-chief evidence contains nothing to support Plaintiff's contention that Defendant's decision to open new stores on Long Island was "an attempt to thumb its nose at" Judge Hurley's summary judgment decision or that this decision was driven by "callous disregard for [either] Plaintiff's rights [or] the Court's ruling."  (Opp'n at 9.)

IV.   Plaintiff is No Longer Entitled to A Jury Trial Because its Remaining Remedies are Equitable, and Not Legal, in Nature

The Seventh Amendment to the United States Constitution preserves the right to a jury trial in civil actions.  U.S. CONST. amend. VII.  "This provision means in part that 'the right to trial by jury of legal claims must be preserved.'"  Car Freshner Corp. v. Am. Covers, LLC, No. 05:17-CV-0171, 2021 WL 4502281, at *6 (N.D.N.Y. Sept. 30, 2021) (quoting Dairy Queen, Inc. v. Wood, 369 U.S. 469, 471-72 (1962)).  Where a "complaint requests a money judgment it presents a claim which is unquestionably legal."  Dairy Queen, 369 U.S. at 476.  "The Supreme Court . . . has explained that a trademark 'infringer is required in equity to account for and yield up his gains to the true owner,' and 'profits are then allowed as an equitable measure of compensation.'"  Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 131 (2d Cir. 2014) (quoting

22

Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, 259 (1916)). The Second Circuit "has expressly attested to the ancient roots of this remedy, explaining that 'the ancient remedies of accounting, constructive trust, and restitution have compelled wrongdoers to 'disgorge' -- i.e., account for and surrender -- their ill-gotten gains for centuries." Id. (quoting S.E.C. v. Cavanagh, 445 F.3d 105, 119 (2d Cir. 2006)). Based upon the distinction that an accounting of profits is an equitable remedy and not a legal one, courts in this circuit have found "that a demand for profits in a trademark case is an equitable remedy that does not create a jury-trial right." Car Freshner, 2021 WL 4502281, at *7; see also Speedfit LLC v. Woodway USA, Inc., No. 13-CV-1276, 2020 WL 3051511, at *4 (E.D.N.Y. June 8, 2020) (noting that "[p]laintiffs unambiguously seek disgorgement of [defendant's] profits" and that "[d]isgorgement has repeatedly been characterized as an equitable remedy by courts in the Second Circuit;" collecting cases); Emmpresa Cubana Del Tabaco v. Culbro Corp., 123 F. Supp. 2d 203, 208-09 (S.D.N.Y. 2000). The principles outlined by the Second Circuit in Gucci are also in line with opinions issued by other circuit courts. See, e.g., Hard Candy, LLC v. Anastasia Beverly Hills, Inc., 921 F.3d 1343, 1358 (11th Cir. 2019) ("[A] claim for an accounting and disgorgement of profits under the Lanham Act is equitable in nature and, therefore, the Seventh Amendment's guarantee of a jury trial does not

apply."); Fifty-Six Hope Rd. Music, Ltd. V. A.V.E.L.A., Inc., 778 F.3d 1059, 1065, 1075 (9th Cir. 2015) (finding that "[a] claim for disgorgement of profits under § 1117(a) is equitable, not legal" and so "[t]he Seventh Amendment does not require that a jury calculate these profits"); Ferrari S.P.A. v. Roberts, 944 F.2d 1235, 1248 (6th Cir. 1991) (holding that the defendant was not entitled to a jury trial where the "complaint requested only equitable relief; an injunction and disgorgement of profits").

Here, since the Court has determined that Plaintiff, as a matter of law, has not adduced sufficient evidence of bad faith to state a prima facie claim for unfair competition under New York law, and that, regardless, Plaintiff's bad faith evidence is legally insufficient to establish, as a matter of law, Plaintiff's right to punitive damages, Defendant's request that the jury be struck is granted because Plaintiff's remaining remedies are all equitable in nature. Specifically, Plaintiff's remaining claims consist of disgorgement of profits under Federal and state law, and an injunction pursuant to GBL § 360-l.

CONCLUSION

For the stated reasons, **IT IS HEREBY ORDERED** that the Defendant's Reconsideration Motion (ECF No. 250) is GRANTED. Accordingly:

I.   Upon reconsideration, Plaintiff's Motion for Judgment as a Matter of Law on Plaintiff's common law unfair competition claim and its claim for punitive damages under the same is GRANTED;

II.  Defendant's Motion to strike the jury is also GRANTED as Plaintiff's remaining remedies are equitable, and not legal, in nature.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: April 26, 2023
       Central Islip, New York